THE STATE EX REL. SPOHN, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Spohn v. Indus. Comm.,* 115 Ohio St.3d 329, 2007-Ohio-5027.]

(No. 2005–1358—Submitted May 1, 2007—Decided October 3, 2007.)

---

LANZINGER, J.

{¶ 1} This is an appeal as of right after a claimant's permanent total disability compensation was terminated in a workers' compensation matter. We affirm the judgment of the court of appeals.

Case Background

{¶ 2} In 1991, after years of industrial back problems, appellant, Steven Spohn, was awarded permanent total disability compensation. No one then disputed the severity of his condition. Years later, however, Spohn's employer, appellee Seaway Food Town, Inc., alleging that recent medical treatment had significantly improved Spohn's condition, persuaded appellee Industrial Commission of Ohio to reopen the matter. Permanent total disability compensation was terminated in 2000. Spohn now contests the commission's continuing jurisdiction to reopen the issue and its subsequent determination that he is no longer permanently and totally disabled.

{¶ 3} Spohn had five separate industrial injuries while working at Seaway. The most severe occurred in 1978 and 1985 and involved his lower back. Over the years, he had several surgeries, with little improvement. Spohn never returned to work after his 1985 injury, and in 1986, his last workers' compensation claim was additionally allowed for "major depression, single episode."

{¶ 4} Spohn eventually applied for permanent total disability compensation. That application generated numerous medical reports. Examiners placed restrictions on his walking, climbing, lifting, stooping, bending, and twisting. Drs. Gerald S. Steiman and S.S. Purewal limited Spohn to sedentary employment. He was also examined by three psychologists, Drs. William A. Seman, Robert A. Muehleisen, and Robert A. MacGuffie. They all concluded that (1) Spohn has nonallowed psychological conditions that contribute heavily to his overall emotional state, (2) further psychiatric intervention will yield no improvement, and (3) Spohn's overall psychiatric condition precludes any sustained remunerative employment.

{¶ 5} All of these reports were considered in a combined-effects review on February 1, 1990, by Dr. James E. Mann, who concluded: "The claimant has a whole man combined effects impairment of 70%. The claimant is not able to return to his former position of employment. The condition is permanent. The claimant, in my opinion, could engage in some forms of sustained remunerative employment, but there would be significant restrictions. The claimant would have to be restricted to sedentary employment requiring lifting of no more than 10 or 15 lbs. and which would not require him to bend, lift, twist, or otherwise stress his back. He also could not be expected to perform employment demanding a great deal of concentration and attention or the required and intense and demanding interaction with supervisors, fellow workers, or the public in general. In my opinion rehabilitation would not help to return the claimant to the forms of remunerative employment that he could perform within the above restrictions."

{¶ 6} The Bureau of Workers' Compensation's Rehabilitation Division concurred in Dr. Mann's rehabilitation assessment:

{¶ 7} "Based on Vocational Screening results, prognosis for future vocational rehabilitation services appears to be poor at this time. Significant barriers in returning to work include: work history, physical capacities, aerobic conditioning, proper use of medications, pain behaviors, monetary incentives, attitude toward participation in rehabilitation programming, initiative during vocational screening, work pacing, and surgical history and emotional history.

{¶ 8} "Rehabilitation services were discussed and the client expressed no interest in getting involved. The client said, 'the only way I will come back down here is in a pine box.'"

{¶ 9} The commission granted permanent total disability benefits on June 4, 1991, writing: "The claimant is approximately 35 years of age, with a high school education and one semester of computer training at Owens Technical College. The claimant has work experience as a warehouseman. The claimant has undergone back surgeries in 1978, 1979 and 1981. Dr. Mann in his 02/01/90 report states the claimant would be limited to very sedentary work, with severe restrictions in bending, lifting or twisting. Dr. MacGuffie in a 04/19/90 report states the claimant is PTD from a vocational perspective. Therefore, PTD is granted."

{¶ 10} Throughout the 1990s, Spohn's back pain continued, and more surgery followed. In 1996, however, he began receiving epidural steroid injections in his back, which resulted in significant pain reduction over the next 15 months. In 1998, Seaway hired investigators to monitor Spohn's activities. The investigators obtained the master list of members from a local country club, which showed Spohn playing 95 rounds of golf that year.

{¶ 11} On December 6, 1999, Seaway sought to have Spohn medically examined by a doctor of its choice pursuant to R.C. 4123.651. A district hearing officer granted that request on January 7, 2000, and stated that "failure to appeal [sic, appear] will result in suspension [of compensation] under 4123.651(C)." Spohn did not appeal that order.

{¶ 12} On February 14, 2000, Spohn was seen by Dr. Michael L. Koltz. Dr. Koltz found no objective evidence to corroborate Spohn's complaints of back pain, nor did he find any evidence of lumbar instability. He concluded: "Mr. Spohn is clearly fixated on the stressors of his life. With regard to the conditions allowed in this claim, Mr. Spohn has satisfactor[ily] recovered to the point where he is functional and for this reason, I believe that he is *not* permanently and totally disabled. It is fascinating to note that when Mr. Spohn is distracted from his complaints of back and leg pains, he moves about freely in a very non-guarded, painless posture. It is further fascinating to note that the Infoquest surveillance report demonstrates that Mr. Spohn is very functional and he did not appear to have any problems walking or swinging a golf club. He moves about freely,

bending at the waist, picking up golf balls, tees and so forth. The mid-back and low back biomechanics of golf require significant rotation and flexion of the back. It is clear that Mr. Spohn is able to perform these functions nicely. This was also further demonstrated in my medical examination today. For this reason, I clearly believe that Mr. Spohn has a very good functional range of motion of the back and * * * clearly has no permanent total disability." (Emphasis sic.)

{¶ 13} Dr. Daniel J. Kuna conducted the psychological examination and identified Spohn's primary conditions as pathological gambling, personality disorder, and adjustment disorder with anxiety, none of which are allowed in the claim. He opined that the sole allowed condition of "major depression, single episode" was in remission and did not render Spohn permanently and totally disabled.

{¶ 14} Spohn did not submit any updated medical evidence regarding his back condition or any additional vocational evidence. He did submit a report from treating psychiatrist Dr. Lurley J. Archambeau, who opined that Spohn remained incapable of sustained remunerative work.

{¶ 15} A staff hearing officer issued a lengthy order on October 3, 2000. The hearing officer first determined that there was continuing jurisdiction to reopen the issue of Spohn's eligibility for permanent total disability benefits, finding that the improvement Spohn experienced after his epidural injections constituted a new and changed circumstance. The hearing officer then considered the merits of Spohn's eligibility from physical, psychiatric, and vocational standpoints. The staff hearing officer relied on Dr. Koltz's report and found that Spohn was physically capable of "at least sedentary sustained remunerative employment." Regarding psychological factors, the hearing officer relied on Dr. Kuna's report and concluded that based solely on the allowed conditions, Spohn was not incapable of sustained remunerative work.

{¶ 16} On the vocational component, the staff hearing officer observed:

{¶ 17} "The claimant has a home computer. The claimant had computer training at Owens Technical College in 1988. The claimant testified at hearing that he uses his home computer to access internet sites, particularly for video games and sweepstakes.

{¶ 18} "The claimant testified that he has difficulty reading, remembering and concentrating. However, the Staff Hearing Officer finds this unpersuasive and contra-indicated by his organized and systematic approach to internet gambling and sweepstakes. The claimant also testified about bird watching and keeping records on sightings. This also requires concentration, organization, reading and record keeping skills."

{¶ 19} The staff hearing officer thus concluded: "[T]he claimant's vocational factors would also not preclude the claimant from performing sustained remuner-

ative employment. The claimant is currently only 44 years old, which is a younger individual by definition in OAC 4121–3–34. The claimant is a high school graduate with additional college training in computers. The claimant has demonstrated computer skills in his activities of daily living. The claimant is clearly able to read, write and perform basic math, again established by his activities of daily living. There is no evidence of any learning disability which would preclude the claimant from re-training into areas of entry level sedentary work. These are all *positive* vocational factors." (Emphasis sic.)

{¶ 20} Permanent total disability compensation was, therefore, terminated.

{¶ 21} Spohn filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission lacked both jurisdiction and evidentiary support to terminate permanent total disability compensation. The court of appeals disagreed and denied the writ, prompting Spohn's appeal as of right.

## Legal Analysis

{¶ 22} Spohn's first challenge is procedural. He asserts that the commission lacked continuing jurisdiction to reopen the issue of entitlement to permanent total disability compensation, focusing primarily on the October 3, 2000 staff hearing officer's order. This focus is misplaced, as it was not the staff hearing officer's order but the January 7, 2000 order of the district hearing officer that reopened the issue. "[A]ny medical examination going to the question of extent of disability inherently reopens the permanent total disability issue." *State ex rel. Smothers v. Mihm* (1994), 69 Ohio St.3d 566, 568, 634 N.E.2d 1017. Consequently, the district hearing officer's command to appear at Seaway's medical examination was a proper exercise of continuing jurisdiction. Although this is the order to which Spohn should be objecting, he cannot now do so, because he did not appeal that order administratively.

{¶ 23} Spohn, however, argues that the district hearing officer lacked jurisdiction over permanent total disability issues, and, therefore, the termination order is void ab initio. Because of the lack of jurisdiction, Spohn claims that his failure to appeal is meaningless. We reject this argument, as did the court of appeals. The court of appeals, through its magistrate, held that the district hearing officer's lack of jurisdiction to order Spohn's attendance at a permanent total disability exam was mooted by Spohn's attendance. The magistrate apparently reasoned that by not refusing to submit to the examination, Spohn consented to the district hearing officer's jurisdiction. When coupled with the failure to appeal this issue, this issue was deemed moot by the court of appeals.

{¶ 24} Part of the court's reasoning is tenuous, because nonattendance at the examination was not an option. The district hearing officer directed that

compensation would be suspended if Spohn did not appear. An appeal, however, was an option. Far from being a vain act, an appeal would have preserved Spohn's right to contest the district hearing officer's invocation of continuing jurisdiction. Accordingly, we hold that the issue of continuing jurisdiction is moot.

{¶ 25} Spohn next claims that the commission violated his due process rights when it failed to have him examined by a commission doctor. This position implies that the commission could not address Spohn's continuing eligibility for permanent total disability compensation with reports only from Seaway's doctors.

{¶ 26} This contention is meritless. Spohn could have submitted his own medical or vocational evidence but chose not to do so. There is, moreover, no requirement that the commission conduct its own examination in cases involving termination of compensation. Ohio Adm.Code 4121–3–34 mandates a commission medical exam when the initial permanent total disability application is filed but says nothing about motions to terminate. Accordingly, we find this argument unpersuasive.

{¶ 27} Spohn's last challenge to the commission's order is evidentiary. We begin by holding that none of Spohn's objections to the Koltz and Kuna reports have merit, and accordingly we refuse his request to have those reports removed from consideration. The medical component of our disability review thus proceeds from the consensus of these two doctors that Spohn is medically capable of sedentary work.[1]

{¶ 28} In 1990, Dr. James E. Mann stated, "The claimant, in my opinion, could engage in some forms of sustained remunerative employment, but there would be significant restrictions. The claimant would have to be restricted to sedentary employment requiring lifting of no more than 10 or 15 lbs. and *which would not require him to bend, lift, twist, or otherwise stress his back.* * * * In my opinion rehabilitation would not help to return the claimant to the forms of remunerative employment that he could perform within the above restrictions." (Emphasis added.)

{¶ 29} Eight years later, however, Spohn was capable of playing 95 rounds of golf in less than a year. On February 14, 2000, he was seen by Dr. Michael L. Koltz, who found no objective evidence to corroborate Spohn's complaints of back pain, nor any evidence of lumbar instability. As Dr. Koltz reported, Spohn was "very functional" and did not appear to have any problems walking or swinging a golf club. He was also able to easily perform tasks associated with golfing, such as bending over to pick up golf balls and tees. Koltz also noted that golf requires

---

1. We decline to speculate as to what the commission may have meant by its reference to "at least" sedentary employment and confine our review to that specified work capacity.

significant rotation of the back and that this requirement posed no problem for Spohn. Koltz concluded, "Spohn has a very good functional range of motion of the back and * * * clearly has no permanent total disability."

{¶ 30} Dr. Daniel J. Kuna also determined that Spohn's allowed condition of "major depression, single episode" was in remission and did not render Spohn permanently and totally disabled. Relying on these two doctors' reports, the staff hearing officer found that in October 2000, Spohn was physically capable of sustained remunerative employment.

{¶ 31} The hearing officer found that from a vocational standpoint, Spohn was capable of sustained remunerative employment. A 1990 vocational assessment by the Bureau of Workers' Compensation's Rehabilitation Division had considered Spohn's "pain behaviors" and "emotional conflicts" to be barriers to employability, but the later opinions of both Drs. Koltz and Kuna show that Spohn had significantly improved in both areas. The hearing officer thus did not abuse her discretion in inferring that the physical and emotional improvement Spohn experienced after his epidural injections constituted a new and changed circumstance and that he was now capable of sustained remunerative work.

{¶ 32} In one instance, however, the commission exceeded its permissible inferences. The commission found that Spohn has marketable computer skills. Spohn had one computer class in 1988, known to, and cited by, the commission in 1991 when it awarded Spohn permanent total disability compensation. The mere ability to surf the Internet and play video poker does not demonstrate computer skills transferable to the marketplace. The commission's wide discretion to draw inferences is not unlimited. *State ex rel. Lawson v. Mondie Forge,* 104 Ohio St.3d 39, 44, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. Although the conclusion that Spohn possessed marketable computer skills is impermissible, this is not to say that the record shows he is incapable of all work.

{¶ 33} We will not conclude that the commission abused its discretion so long as there is "some evidence in the record to support the commission's stated basis for its decision." *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, syllabus. Under this standard of review, "the presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met." *State ex rel. Am. Std., Inc. v. Boehler,* 99 Ohio St.3d 39, 2003-Ohio-2457, 788 N.E.2d 1053, ¶ 29. In this case, Spohn's medical examiners have provided the evidence through their reports, explaining that Spohn now has improved range of motion in his back, as well as improved pain behaviors and emotional stability. He is capable of a sedentary job. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and O'DONNELL, JJ., dissent.

---

### O'DONNELL, J., dissenting.

{¶ 34} A finding that a claimant is medically capable of sustained remunerative employment compels additional consideration of the individual's nonmedical disability factors. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. It is immaterial whether a claimant is medically capable of certain work if his or her nonmedical/vocational profile disqualifies the claimant from that work. Because I believe that Spohn's nonmedical profile disqualifies him from any employment of which he is physically capable, I respectfully dissent.

{¶ 35} In 1991, the commission deemed Spohn's education, work history, and rehabilitation potential to be so unfavorable as to overcome the one positive factor that Spohn possessed—his youth. Nine years later, there is no evidence that Spohn's education, employment history, or amenability to rehabilitation has improved. Two things have, however, changed—Spohn is now older and a decade further removed from the workforce. These factors do not enhance Spohn's employability.

{¶ 36} The commission relied heavily on what it considered to be Spohn's transferable employment skill. I find these conclusions to be unsustainable. In my view, the commission's finding that Spohn has marketable computer skills constitutes an abuse of discretion. First, the staff hearing officer's reference to "additional college training in computers" is misleading. Spohn had one computer class in 1988; this is hardly relevant to 2007. That training was also known to and cited by the commission in 1991, and it nonetheless awarded permanent total disability compensation. Moreover, surfing the Internet and playing video poker games, contrary to the staff hearing officer's suggestion, do not demonstrate computer skills transferable to the marketplace.

{¶ 37} The same conclusion attaches to the staff hearing officer's reference to Spohn's birdwatching. Spohn records sightings at his bird feeder. The staff hearing officer felt that this activity demonstrated organizational and recordkeeping skills that enhanced Spohn's job prospects. This conclusion also cannot be endorsed. Spohn's tally of finches and blue jays visiting his feeder is not a transferable employment skill.

{¶ 38} The commission's conclusion that Spohn can perform sustained remunerative employment cannot be reconciled with the underlying facts. In my view, the commission has abused its discretion in terminating Spohn's permanent total

disability compensation, and, accordingly, I would reverse the judgment of the court of appeals.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

———————

Fell & Marcus Co., L.P.A., and George N. Fell II, for appellant.

Marc Dann, Attorney General, and Kevin R. Sanislo, Assistant Attorney General, for appellee Industrial Commission.

Law Offices of Margelefsky & Mezinko, L.L.C., Vincent S. Mezinko, and Michael P. Margelefsky, for appellee Seaway Food Town, Inc.