[Cite as *State ex rel. Willoughby v. Ohio Police & Fire Pension Fund*, 2014-Ohio-4772.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. David H. Willoughby, | : | |
| Relator, | : | |
| | | No. 13AP-569 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Police & Fire Pension Fund, | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on October 28, 2014

*David H. Willoughby*, pro se.

*Michael DeWine*, Attorney General, and *Jennifer S. M. Croskey*, for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, P.J.

{¶ 1} In this original action, relator, David H. Willoughby, requests a writ of mandamus ordering respondent, Ohio Police and Fire Pension Fund ("OP&F") and its board of trustees ("the board"), to vacate its order denying his application for a disability benefit under R.C. 742.38 and to enter an award of disability benefits based on R.C. 742.38(D)(1) or, in the alternative, R.C. 742.38(D)(3).

I. BACKGROUND

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that the board

was compelled to grant relator a disability benefit, pursuant to R.C. 742.38(D)(4), as it existed at times pertinent hereto. Accordingly, the magistrate recommended that this court grant a writ of mandamus ordering respondent to vacate its order denying relator's disability application and to enter an order granting relator a disability benefit under R.C. 742.38(D)(4).

## II. OBJECTIONS

{¶ 3} Though respondent has filed objections to the magistrate's decision, no party has objected to the magistrate's findings of fact. Upon an independent review of the record, we adopt the magistrate's findings of fact as our own. With respect to the magistrate's conclusions of law, respondent presents the following objections:

> [I.] The Magistrate erred in recommending that this court issue a writ of mandamus ordering OP&F to vacate its order denying disability benefits. "Some evidence" supports OP&F's decision.

> [II.] The Magistrate erred in recommending that this court issue a writ of mandamus ordering OP&F to enter an order granting Willoughby a benefit for a disability not caused or induced by the performance of the member's official duties.

## III. ANALYSIS

{¶ 4} To obtain a writ of mandamus, the relator must establish (1) a clear legal right to the requested relief, (2) a clear legal duty upon the respondent to perform the requested act, and (3) no plain and adequate remedy in the ordinary course of law. *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990). "Because the final OP&F board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in denying disability benefits." *State ex rel. Tindira v. Ohio Police & Fire Pension Fund*, 130 Ohio St.3d 62, 2011-Ohio-4677, ¶ 28. "A clear legal right to the requested relief in mandamus exists 'where the board abuses its discretion by entering an order which is not supported by "some evidence." ' " *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 2, quoting *Kinsey* at 225.

{¶ 5} Because respondent's objections to the magistrate's decision are interrelated, we address them together for ease of discussion. In these objections,

respondent contends that relator's complaint requests a writ of mandamus ordering respondent to award disability benefits under either R.C. 742.38(D)(1) or (3); therefore, the magistrate erred in recommending that this court grant a writ of mandamus ordering respondent to award disability benefits under R.C. 742.38(D)(4). Additionally, respondent contends that, because there is some evidence to support its denial of disability benefits under both R.C. 742.38(D)(1) and (D)(3), this court should deny relator's request for a writ of mandamus.

{¶ 6} The magistrate found that the board relied on the report of Dr. Tzagournis, who was uncertain as to whether relator's condition was permanent or temporary, to deny relator's request for disability benefits. The magistrate, relying on *Tindira*, concluded that disability benefits under former R.C. 742.38(D)(4) could not be denied on the grounds that the condition is not permanent, and, therefore, the magistrate recommended that this court issue a writ of mandamus ordering respondent to grant relator a disability benefit under former R.C. 742.38(D)(4). In objecting to the magistrate's recommendation, respondent asserts the magistrate erred in providing relief that relator did not seek in this action. We agree.

{¶ 7} Relator's complaint asserts he is "permanently and totally disabled as a result of [his] official duties as a police officer." (Complaint, 15.) Further, the complaint asserts relator is entitled to annual disability benefits under "R.C. § 742.38(D)(1)," but if the disabling conditions were not the result of the performance of his official duties as a police officer, his diagnosis of hypertension and chest pain constitute chronic " 'heart disease or [any] cardiovascular [or respiratory] disease' " presumed to have been incurred while performing his official duties. (Complaint at 17, quoting R.C. 742.38(D)(3).) In conclusion, the complaint requests "[a] writ of mandamus to direct respondent [OP&F] to award disability benefits to Relator based on Ohio Revised Code § 742.38(D)(1)." (Complaint, 18.)

{¶ 8} Similarly, in his brief to the magistrate, relator argued the board abused its discretion by failing to award disability benefits "in compliance with R.C. 742.38(D)(1)" and "by failing to recognize that [his] heart disease and/or cardiovascular disease has a prima facie presumption to have been incurred during the performance of [his] official duties, in accordance with R.C. 742.38(D)(3)." (Merit Brief, 20, 28.) Relator's merit brief

reiterated that he sought a writ of mandamus compelling respondent "to award him a duty-related disability pension in accordance with R.C. § 742.38(D)(1), or in the alternative, * * * a duty-related disability pension in accordance with R.C. § 742.38(D)(3)." (Merit Brief, 33-34.)

{¶ 9} As stated in *State ex rel. Union Metal Corp. v. Indus. Comm.*, 10th Dist. No. 03AP-1247, 2005-Ohio-847, "[w]e cannot grant relief that is not requested." *Id.* at ¶ 3, citing *State ex rel. Gibbs v. Concord Twp. Trustees*, 152 Ohio App.3d 387, 2003-Ohio-1586, ¶ 37 (11th Dist.) (because the complaint did not seek a writ of mandamus compelling "reinstatement," the magistrate's recommendation that a writ granting such relief was rejected); *Parker v. Upper Arlington*, 10th Dist. No. 05AP-695, 2006-Ohio-1649 (courts cannot grant relief not requested in complaint); *Clough v. Lawson*, 11th Dist. No. 2012-L-118, 2012-Ohio-5831 (an appellate court cannot grant relief not properly requested in the complaint seeking a writ of mandamus).

{¶ 10} Because relator's complaint and briefing in this court repeatedly sought relief under either R.C. 742.38(D)(1) or (3), we find the magistrate's discussion of *Tindira* and its interpretation of R.C. 742.38(D)(4) inapplicable to this matter, and we reject said discussion on that basis. *See State ex rel. Bell v. Ohio Police & Fire Pension Fund*, 10th Dist. No. 11AP-628, 2012-Ohio-6153 (rejecting the magistrate's characterization of the relator's request for benefits as one brought under R.C. 742.38(D)(1) when the complaint and briefs referenced only R.C. 742.38(D)(2)). Consequently, we reject the magistrate's recommendation that we issue a writ of mandamus ordering respondent to award a disability benefit under R.C. 742.38(D)(4).

{¶ 11} Since the magistrate addressed only R.C. 742.38(D)(4), the magistrate did not determine whether relator was entitled to a writ of mandamus ordering respondent to award disability benefits under R.C. 742.38(D)(1) or (3). Thus, we do so now.

{¶ 12} " 'Under R.C. 742.38 and Ohio Adm.Code 742-3-05, the OP & F board is vested with the exclusive authority to evaluate the weight and credibility of the medical evidence in determining a member's entitlement to disability-retirement benefits.' " *Id.* at ¶ 9, quoting *Kolcinko* at ¶ 7. "The board and the Disability Evaluation Panel ("DEP") must consider 'all competent evidence' and must 'rely upon the medical opinions of the DEP physicians and OP&F's medical advisor, who have given due consideration of medical and

other evidence presented to OP&F.' " *Id.*, quoting Ohio Adm.Code 742-3-05(B)(4) and (6). "Under the appropriate standard of review, the presence of contrary evidence is immaterial if there is evidence in support of the board's findings of fact." *Kolcinko* at ¶ 9.

{¶ 13} Upon review of the record, we conclude the board did not abuse its discretion in denying disability benefits, pursuant to R.C. 742.38(D)(1) or (3), as its denial is supported by some evidence. At a minimum, the reports of Drs. Ball and Tzagournis support the denial, as these reports conclude relator is not disabled and that the alleged disabling conditions were not caused by the performance of his official duties. Additionally, the evidence presented here does not support relator's assertion that he is entitled to disability benefits based on the presumption set forth in R.C. 742.38(D)(3).

{¶ 14} For all the foregoing reasons, respondent's objections to the magistrate's decision are sustained. Given our conclusion that relator has failed to establish a clear legal right to the relief requested, we deny the requested writ of mandamus.

## IV.  CONCLUSION

{¶ 15} After review of the magistrate's decision and an independent review of the record, we adopt the magistrate's findings of fact, but reject the magistrate's conclusions of law and substitute the same with our own as set forth in this decision. Accordingly, we sustain respondent's objections and deny the requested writ of mandamus.

*Objections sustained;*
*writ of mandamus denied.*

TYACK and CONNOR, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel.                                    :
David H. Willoughby,

                                                        :

            Relator,                              :                    No.  13AP-569

                                                        :

v.                                                      :                    (REGULAR CALENDAR)

                                                        :

Ohio Police & Fire Pension
Fund,                                                   :

            Respondent.                          :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 20, 2014

---

*David H. Willoughby,* pro se.

*Michael DeWine*, Attorney General, and *Jennifer S. M. Croskey*, for respondent.

---

### IN MANDAMUS

{¶16} In this original action, relator, David H. Willoughby, requests a writ of mandamus ordering respondent, Ohio Police & Fire Pension Fund ("OP&F"), to vacate its order denying his application for a disability benefit under R.C. 742.38, and to enter an order granting the application.

<u>Findings of Fact</u>:

{¶17} 1. In late 2006, relator became Chief of Police for the Village of New Richmond, Ohio.  In September 2008, relator was placed on administrative leave by the village mayor.

{¶18}  2. On October 24, 2008, a search warrant was executed on relator's personal residence, and later charges were brought.

{¶19}  3. In May 2009, relator entered into a plea agreement in which he was allowed to plead guilty to misdemeanors in exchange for his dismissal of a lawsuit.  He resigned from the New Richmond Police Department in May 2009.

{¶20}  4. On June 5, 2009, relator filed a disability benefits application on a form provided by OP&F.

{¶21}  On the form, relator listed seven disabling conditions described as:  (1) "Hypertension"; (2) "Post Traumatic Stress [Disorder]"; (3) "Chest Pain"; (4) "Insomnia"; (5) "Depression"; (6) "Anxiety"; (7) and "Bilateral Paresthesia."

{¶22}  5. On July 7, 2009, attending physician Elizabeth A. Doriott, D.O., completed a "Report of Medical Evaluation" on a form provided by OP&F.  On the form, Dr. Doriott listed four diagnoses described as:  (1) "PTSD"; (2) "Chronic Migraines"; (3) "HTN"; and (4) "Chest Pain."

{¶23}  On the form, Dr. Doriott indicated by her mark that she certifies that relator "has a condition of disability from which there is no present indication of recovery."

{¶24}  Beside the request for an "[e]xplanation," Dr. Doriott wrote:

> Presently, PTSD needs to be addressed.  Unable to function
> as officer.

{¶25}  6. On August 11, 2009, at OP&F's request, relator was examined by Thomas E. Forte, D.O.  Dr. Forte completed a "Report of Medical Evaluation" on a form provided by OP&F.  On the form, Dr. Forte indicated by his mark his agreement with the following pre-printed statement:

> The member has **a condition of disability from which
> there is no present indication of recovery** using the
> occupational characteristics developed by the U.S.
> Department of Labor for the positions of police officer -
> government service or fire fighter any industry.

(Emphasis sic.)

{¶26}  7. Dr. Forte also issued a seven-page narrative report, stating:

**MEDICAL HISTORY:** Mr. Willoughby is a 38 year-old male who worked as a police officer in New Richmond. He states that he was in good health until an event on 10/24/08 when police entered his home and he was handcuffed and held at gunpoint while police executed a search warrant. He states since that time he has been found to have hypertension, has ongoing central retrosternal chest pain, and has paresthesias in the ulnar distribution of both hands with pain, tingling and numbness with some weakness.

Condition: **Hypertension and chest pain**
II. A. Synopsis: He states the hypertension developed approximately 3 months after the 10/24/08 incident.

* * *

Condition: Paresthesias bilateral hands and fingers
II. A. Synopsis: He states the symptoms began after being handcuffed during the event of 10/24/08. He does not describe any treatment for the symptoms and has had no electrodiagnostic testing. He reports full range of motion with some pain radiating into the ring and small digits of both hands.

* * *

**Discussion:**

1) Hypertension and chest pain: The shown reports no significant restrictions of activities related to these conditions but in general should avoid heavy lifting, limit reaching, climbing and above chest activities and would have [some] difficulty in physically apprehending suspects.

2) Insomnia: In this examiner's opinion the insomnia is a symptom related to this gentleman's psychiatric conditions and should be rated by the psychological examiner.

* * *

**Impact on activities of daily living**

This gentleman would have limitations for heavy lifting, should limit reaching, climbing, above chest activities and would have some difficulty and [sic] apprehending suspects.

{¶27} 8. Also in his narrative report, Dr. Forte performed an impairment evaluation under the American Medical Association's Guides to the Evaluation of Permanent Impairment—Fifth Edition. Dr. Forte estimated a 12 percent whole person impairment based upon "[h]ypertension and chest pain."

{¶28} 9. On August 30, 2009, at the request of OP&F, relator was examined by Delaney M. Smith, M.D. Dr. Smith completed a "Report of Medical Evaluation" on a form provided by OP&F. On the form, Dr. Smith indicated by her mark her agreement with the following pre-printed statement:

> The member has a **condition of disability from which there is no present indication of recovery** using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer - government service or fire fighter any industry.

{¶29} 10. Dr. Smith also issued a nine-page narrative report, stating:

> At your request, I have performed a psychiatric evaluation of Mr. David Willoughby to offer an opinion on several questions that you posed.
>
> [One] Was Mr. Willoughby's alleged psychological disability the result of the performance of his official duties as a police officer?
>
> [Two] Was Mr. Willoughby's alleged psychological disability already present when he was hired?
>
> [Three] Did Mr. Willoughby's alleged psychological disability develop after employment but for reasons unrelated to work?
>
> [Four] If the answer is "Yes," did Mr. Willoughby's employment induce or aggravated [sic] the pre-existing or concurrently developing psychological disability?
>
> * * *
>
> ***Diagnostic Impression:***
>
> **Axis I**              Major Depressive Disorder Single episode moderate Anxiety Disorder Not Otherwise Specified with features of

Post Traumatic Stress Disorder and panic disorder

**Axis II**    None given

**Axis III**    Hypertension, Ulcers, GERD, seasonal allergies, migraines, parasthesias in hands, kidney stones

**Axis IV**    Occupational Problems (Career loss), Legal problems, Social embarrassment

**Axis V**    58

The diagnosis of Major Depression is given based on Mr. Willoughby's history of one episode of depressed mood all day every day. Currently he has decreased interests, poor concentration, sleep, energy and appetite, and feelings of guilt and worthlessness.

The diagnosis Anxiety Disorder NOS is given based on Mr. Willoughby's having symptoms of Post Traumatic Stress Disorder and Panic Disorder which do not fully meet criteria for either but are causing clinically significant distress.

### *Opinion:*

### *Is Mr. Willoughby disabled from police work?*

It is my opinion, with reasonable medical certainty, that Mr. Willoughby is currently disabled from his work as a police officer based on his psychiatric conditions. He is unable to safely perform the necessary functions of a police officer as a result of his poor energy, poor sleep, and poor concentration as well as his distress with reminders of police work including sirens and avoidance of reminders of police work.

### *[One] Was Mr. Willoughby's alleged psychological disability already present when he was hired?*

It is my opinion, with reasonable medical certainty, that Mr. Willoughby's psychological disability was not present when he was hired as he has no history of depression, anxiety, or psychological treatment prior to beginning police work.

*[Two] Was Mr. Willoughby's alleged psychological disability the result of the performance of his official duties as a police officer?*

It is my opinion, with reasonable medical certainty, that Mr. Willoughby's psychological disability was not the direct result of the performance of his official duties as a police officer as he did not have any symptoms of depression until the search of his home October 24, 2008 which occurred while he was on administrative leave. While he had some minor symptoms related to traumas which had occurred as a result of the performance of his official duties prior to 2008, the symptoms did not rise to their current level until October 24, 2008.

*[Three] Did Mr. Willoughby's alleged psychological disability develop after employment but for reasons unrelated to work?*

It is my opinion, with reasonable medical certainty, that Mr. Willoughby's psychological disability developed after he was employed as a police officer and as stated above was primarily the result of the trauma he suffered during the search on his home while he was on administrative leave.

*[Four] If the answer to number one or three is "Yes," did Mr. Willoughby's employment induce or aggravated [sic] the pre-existing or concurrently developing psychological disability?*

It is my opinion, with reasonable medical certainty, that Mr. Willoughby's employment as a police officer did aggravate his concurrently developing psychological disability as his prior traumatic experiences during the line of duty as a police officer, while not resulting in symptomatic PTSD in and of themselves likely predisposed him to develop anxiety following the events of October 24, 2008 as it is well established that cumulative trauma and traumatic history are predisposing factors for the development of PTSD. Additionally, some of the distressing recollections revolve around aspects of his police work not related to October 24th, including dreams of guns not firing when he needs them to, avoidance of police shows, and distress with hearing sirens.

In Mr. Willoughby's case, it is my opinion, with reasonable medical certainty, that as a result of his Major Depression PTSD and Panic Disorder with Agoraphobia, Mr. Willoughby has a Whole Person Impairment totaling 25%. The basis for this opinion is as follows:

[One] Mr. Willoughby has mild (30%) impairment of his activities of daily living as a result of his psychiatric symptoms. Mr. Willoughby has poor sleep, cooks and bathes less often and is more distracted when driving.

[Two] Mr. Willoughby has mild (25%) impairment of social functioning as a result of his psychiatric symptoms. He has withdrawn from friends and family.

[Three] Mr. Willoughby has marked (40%) impairment of his concentration/task completion due to his psychiatric symptoms. He has poor memory and concentration.

[Four] Mr. Willoughby has mild (5%) impairment in his ability to tolerate stress due to psychiatric symptoms. Mr. Willoughby is less patient.

In summary, by averaging the four areas of impairment (activities of daily living, social functioning, concentration and compensation under stress); I arrived at a Whole Person Impairment of 25%. A Whole Person Impairment of 25% is also consistent with the global assessment of functioning (GAF) of 58 that I assigned to Mr. Willoughby.

I would add that Mr. Willoughby's prognosis for improvement to the point of being able to return to work in the next year is poor. He has continued to have symptoms for almost a year and is unlikely to have significant improvement.

(Emphasis sic.)

{¶30} 11. On September 11, 2009, at the request of OP&F, relator was interviewed by vocational expert Robert E. Breslin. In his five-page narrative report, Breslin opined:

In approximately 1991, he obtained a position as a Police Officer (D.O.T. #379.263-014) with the Village of Clayton, Ohio. This is classified as skilled and very heavy by the U.S.

Department of Labor. Mr. Willoughby remained in this position for approximately 1 1/2 years, ending in 1993. [H]e also worked for Madison Township as a Patrol Officer for approximately 3 years and with the city of Bellbrook as a Patrol Officer from 1992 through 1998. In 1998 he was hired by the city of Trotwood as a Patrol Officer for one year.

From approximately 2000 through 2003 he worked as a Customer Service Representative (D.O.T. # 032.262-010) for Lexis-Nexis in Dayton, Ohio. This job is classified as sedentary and skilled by the U.S. Department of Labor. Mr. Willoughby was responsible for working with customers who subscribed to the service, including law firms and law students, and assisted them to resolve their problems with printers and other external and peripheral equipment.

In 2003, Mr. Willoughby accepted a position as Police Chief (D.O.T. # 375.117-010) of the New Vienna, Ohio Police Department. According to the D.O.T. this job is classified as sedentary and skilled. New Vienna was a small department in Clinton County with 4 full-time and 15 part-time and/or auxiliary officers. Mr. Willoughby reportedly spent 80% of his time on patrol and 20% on strictly administrative functions.

In December of 2006, Mr. Willoughby accepted the position of Police Chief of New Richmond, Ohio. This was also a relatively small department, with 5 full-time officers, 3 part-time officers and 10 auxiliary officers. Mr. Willoughby reportedly split his time evenly between administrative tasks and patrol in this position. His last day worked in this job was September 22, 2008. He left when he was placed on administrative leave.

* * *

On September 11, 2009, I examined Mr. David Willoughby and made the findings previously listed. On the basis of this examination and review of the available medical records, I make the following judgment:

- Mr. Willoughby is unable to return to his former position of Police Officer. His physical restrictions and mental restrictions would, if considered separately, both preclude the performance of police work. In combination, they obviously do as well.

- Mr. Willoughby has developed transferable skills based on his work as a Police Officer and Customer Service Representative, however, the psychological limitations described by Dr. Smith would not allow him to successfully perform the jobs to which these skills might otherwise provided access.

- Mr. Willoughby has access to some unskilled jobs at the sedentary, light and medium levels of exertions, based upon the combined opinions of Dr. Forte and Dr. Smith.

{¶31} 12. Ohio Adm.Code 742-3-05(A)(12) provides for a disability evaluation panel ("DEP") which is established by the board of trustees of OP&F ("board") to make written recommendations to the board on pending disability applications. The DEP is comprised of three voting members and at least two non-voting members. The three voting members are also members of the board. The non-voting members are comprised of expert physicians and an expert in vocational evaluations.

{¶32} 13. On October 14, 2009, A.J. Ball, M.D., completed a "Disability Evaluation Panel Recommendation" on a form provided by OP&F. Dr. Ball was a non-voting member of DEP. On the form, Dr. Ball indicated by his mark his agreement with the following pre-printed statement.

> The member **is not permanently incapacitated** for the performance of duties using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer - government service or fire fighter - any industry.

(Emphasis sic.)

{¶33} The form provides the following query to the physician:

> **Based on the review of the records submitted to me, the following diagnoses and whole person impairment evaluations are made:**

{¶34} Thereunder, beside his listing of the "Psych" diagnosis, Dr. Ball indicated a 25 percent whole person impairment. Beside that, Dr. Ball wrote in his own hand:

> Not permanent in my opinion. (Not maximally medically improved since no treatment to date by mental health professionals.)

{¶35} Also, beside his listing of "High Blood Pressure" as a diagnosis, Dr. Ball indicated a 9 percent whole person impairment.

{¶36} The form provides an additional query to the physician:

> **Based on the review of the records submitted to me, the final estimated whole-person impairment evaluation is:**

{¶37} In the space provided to indicate the percentage, Dr. Ball drew a line apparently to indicate no percentage.

{¶38} 14. Also on October 14, 2009, Dr. Ball issued a two-page narrative report. Dr. Ball extensively discussed the reports of Drs. Forte and Smith.

{¶39} Regarding the physical conditions addressed by Dr. Forte, Dr. Ball concluded:

> I do not think that there is adequate documentation to support these physical impairments as being disabling, either temporarily or permanently.

{¶40} Regarding the psychological conditions addressed by Dr. Smith, Dr. Ball opined:

> As I noted on the two-page DEP summary form, without treatment by mental health professionals and onset of these symptoms in relation to a criminal investigation one year ago, I don't see these impairments as being maximally medically improved.

{¶41} 15. On October 20, 2009, vocational expert W. Bruce Walsh, Ph.D., completed a "Vocational Recommendation For Disability Evaluation Panel (DEP) Hearing," on a form provided by OP&F.

{¶42} The form asks the vocational expert to state:

> Degree of Earnings Capacity Damage (minimal, mild, moderate, severe or extreme) based on the criteria set forth in Schedule I: _____

{¶43} In the space provided, Dr. Walsh wrote "Deferred" in his own hand.

{¶44}  16.  Page two of the form completed by Dr. Walsh on October 20, 2009 is captioned "Vocational Consultant's Comments After Receipt [o]f [t]he DEP Physician's Conclusions [a]nd [t]he Oral Discussion [a]t [t]he DEP Meeting."

{¶45}  Thereunder, the form provided the following two queries, and Dr. Walsh responded in the spaces provided on October 26, 2009:

> **[One] Additional factors provided by the DEP physicians and the oral discussion at the DEP meeting dated October 26, 2009 in making the following revised determination of the Degree of Earnings Capacity Damage (minimal, mild, moderate, severe or extreme) based on the criteria set forth in Schedule I:**
>
> **a) Determination:  No loss in earnings.**
>
> **b) Factors: He is not incapacitated.**

(Emphasis sic.)

{¶46}  17.  On October 26, 2009, the DEP met to determine a recommendation to the board regarding relator's application for a disability benefit.  On that date, the DEP issued a statement signed by the DEP chairman:

> Based on the Disability Evaluation Panel Recommendations of Dr. Ball, dated October 14, 2009, and the Vocational Recommendation for the Disability Evaluation Panel of Dr. Walsh, dated October 26, 2009, the Disability Committee recommends Mr. Willoughby's initial disability application be denied.

{¶47}  18. By letter dated October 28, 2009, on behalf of the board, Member Services Director N. Kay Penn informed relator:

> By action of the Board of Trustees, your application for disability benefits was disapproved. In reaching its decision, the Board relied upon the entire record which includes your personal history file and medical evidence obtained in conjunction with your application for disability benefits. Based upon the medical evidence, and considering your training, experience and accomplishments, the Board finds that you are not disabled.

{¶48} 19. Pursuant to Ohio Adm.Code 742-3-05(E), relator timely appealed the initial determination of the board that denied relator's application for a disability benefit.

{¶49} 20. In support of his appeal, relator submitted an undated two-page narrative report from Dr. Doriott, stating:

> I have read the reports from Dr. Thomas Forte and Dr. Delaney Smith related to my patient, David H. Willoughby.
>
> After re-evaluating his condition, I still believe that he is disabled and the likelihood that he will be able to return to the workforce in any capacity is severely limited. I do not know when and if he will be rehabilitated enough to return to any skilled type occupation, but it is clear to me that it will not be within the next year. Because of this, I disagree with the Disability Evaluation Panel that Mr. Willoughby is not incapacitated based on the medical conditions for which I am treating him.
>
> **Hypertension**
> I agree with Dr. Forte's diagnoses of hypertension. I have prescribed the patient Metoprolol, 50 mg, bid, for the past several months. I have not seen any significant improvement in his blood pressure despite this medication. I will be monitoring this condition on an ongoing basis and will adjust treatment and medications as needed. I believe Mr. Willoughby suffers from a 10% Whole Person Impairment based on this condition.
>
> **Chest Pain**
> I also agree with Dr. Forte's diagnoses of chest pain. The cause of this chest pain is not known, but is likely to be the result of Mr. Willoughby's psychiatric condition. I believe that Mr. Willoughby suffers from a 2% Whole Person Impairment based on this condition.
>
> **Migraine Headaches**
> Mr. Willoughby continues to suffer from migraine headaches. I do not know the cause of the migraines, but attribute it to the patient's depression. I believe that Mr. Willoughby suffers from a 2% Whole Person Impairment based on this condition.

**Psychiatric Conditions**

I agree with Dr. Smith's diagnosis of Major Depressive Disorder. I have prescribed the patient Celexa, 40mg, qd for his various psychiatric disorders. The medication has worked to slightly lower the patient's feelings of depression and will be continued indefinitely.

I have diagnosed Mr. Willoughby with Post-Traumatic Stress Disorder, although Dr. Smith cites it as a symptom of Major Depressive Disorder. Mr. Willoughby continues to show symptoms of PTSD, including flashbacks, sleep disturbances (night terrors), insomnia, avoidance and hyper vigilance. Because of his increases [sic] symptoms, including hyper vigilance and flashbacks, I have recommended to Mr. Willoughby and his family that he remove all firearms from his residence. He reports to me that all firearms have been sold and he no longer has any type of weapon in his house.

I also have diagnosed Mr. Willoughby with Generalized Anxiety Disorder. His symptoms have caused him to be unable to deal with everyday life functions, such as family relationships, sexual relationships, and occupational potential.

I have prescribed Mr. Willoughby Ambien 10mg, qd. He reports that the Ambien has helped with his insomnia, but has not improve[d] the re-occurrences of night errors and other sleep disturbances.

**Conclusion**

Based upon my examination and a review of the records for this patient, I believe that he has [a] Whole Person Impairment of 54% and is incapacitated based on these impairments. This disability is not likely to improve and the incapacitation has and will continue to restrict his ability to work, which will unfortunately cause a substantial loss of income to him and his family.

{¶50} 21. OP&F requested from Breslin, an addendum report following his review of Dr. Doriott's undated narrative report. On February 18, 2010, Breslin wrote:

The following materials were included.
- My original Vocational Evaluation report, dated 09/25/2009.

- Re-Evaluation of Patient David H. Willoughby from Elizabeth A. Doriott, D.O., undated.

Based upon my review of the above information, I would not change my original opinion. In her report of July 7, 2009, Dr. Doriott indicated that Mr. Willoughby would be "unable to function as an officer of the law." I took this assessment into account in my evaluation and came to the same conclusion under section 6, Evaluator's Conclusions and Recommendations. Dr. Doriott again indicated that Mr. Willoughby's "incapacitation has and will continue to restrict his ability to work." She does not, however, specifically state to what degree Mr. Willoughby will be restricted. In the absence of any new information, I have assumed that the restriction on work remains the inability to return to his accustomed work as a Police Officer.

If it is Dr. Doriott's intention to indicate that Mr. Willoughby is unable to perform any job, then that would obviously change my vocational opinion, however, it is not clear to me that this is her meaning.

{¶51} 22. OP&F requested from Dr. Smith an additional report following his review of Dr. Doriott's undated narrative report. On March 7, 2010, Dr. Smith issued an additional report, stating:

I evaluated Mr. Willoughby on August 22, 2009 in order to address several questions posed by the Ohio Police and Fire Pension Board. I diagnosed him with Major Depressive Disorder, Single, Moderate, Anxiety Disorder Not Otherwise Specified with features of Post Traumatic Stress Disorder and panic disorder with a poor prognosis for future recovery to the point of being able to return to work as a police officer. At that time I opinioned with a reasonable degree of medical certainty that he was disabled from his work as a police officer based on his psychiatric conditions, that his mental health problems were not caused by his work as a police officer and developed after he was employed as a police officer but while on administrative leave. I opined that as a result of these problems he had a whole person impairment of 25%.

A review of the additional information provided to me did not change my opinion with regard to his diagnosis, prognosis, or disability. However, it is my opinion with

reasonable medical certainty, that there is some information which warrants a re-evaluation of the whole person impairment which I assigned at the time of my examination. According to the report of Dr. Elizabeth Doriott, D.O., Mr. Willoughby has been experiencing flashbacks which he did not report to me. He also had symptoms of such severity that Dr. Doriott told his family to remove all firearms from the residence which would suggest some concerns regarding suicidality which he did not disclose to me. She reported that "His symptoms have caused him to be [unable] to deal with everyday life functions, such as family relationships, sexual relationships, and occupational potential." However, there are no specific examples cited of the difficulties or their severity. She went on to assign a whole person impairment of 40% based upon his emotional conditions. If an exact percentage is required by the Board I would recommend another evaluation to determine the extent of these impairments mentioned by Dr. Doriott, to evaluate suicidal thoughts as this could change his diagnosis from moderate to severe depression, and to examine if his whole person impairment is in fact higher th[a]n the 25% I originally assigned him.

{¶52} 23. On May 14, 2010, at the request of OP&F, vocational consultant Bruce S. Growick, Ph.D., completed page one of a form captioned "Vocational Recommendation For Appeal Hearing." Page one of the form has three sections. Section III asks the vocational consultant to select one of five pre-printed answers to the query "Degree of Earnings Capacity Damage * * * based on the criteria set forth in Schedule II." Given a choice of "minimal, mild, moderate, severe or extreme," Growick selected "minimal."

{¶53} On May 25, 2010, Growick completed page two of the form. Growick wrote "minimal" in response to the following two-part query:

> **Additional factors provided by the oral testimony as well as any new evidence submitted for the appeal hearing dated May 25, 2010 in making the following revised determination of the Degree of Earnings Capacity Damage (minimal, mild, moderate, severe or extreme) based on the criteria set forth in Schedule II:**
>
> **a) Determination:**

**b) Factors:**

(Emphasis sic.)

{¶54} 24. Pursuant to Ohio Adm.Code 742-3-05(A)(11), the board appoints a medical advisor to advise the board during its deliberations of appeals of decisions relating to disability applications.

{¶55} 25. Pursuant to Ohio Adm.Code 742-3-05 (A)(11), the board appointed Manuel Tzagournis, M.D., as medical advisor.

{¶56} 26. OP&F provides a four-page form captioned "Medical Recommendation [f]or Appeal Hearings [b]y OP&F Medical Advisor." The form contains five sections captioned as follows:

> **Section I - MEMBER INFORMATION**
> **Section II - INITIAL DETERMINATION**
> **Section III - OP&F MEDICAL ADVISOR'S REC-**
> **OMMENDATIONS**
> **Section IV - INFORMATION MEDICAL ADVISOR**
> **RELIED ON IN MAKING DETERMINATIONS**
> **Section V - MEDICAL ADVISOR'S COMMENTS**
> **AFTER ORAL TESTIMONY AND RECEIPT OF ANY**
> **NEW EVIDENCE AT THE APPEAL HEARING**

(Emphasis sic.)

{¶57} Initially, at the top of page one, the form instructs:

> **Evaluation**
> In order to evaluate the medical impairment and any resultant disability of the member named in Section I below, the recommendations set forth in Section III are based on the methods of analysis described in the American Medical Association's (AMA) *Guides to the Evaluation of Permanent Impairment, Fifth Edition* and the occupational characteristics developed by the U.S. Department of Labor for the positions of "police officer (government service)" and "fire fighter (any industry)."
>
> In reviewing the member's records, the OP&F Medical Advisor must accept all findings of the examining physicians, but not the opinions drawn therefrom. In addition, the OP&F Medical Advisor should note all medical reports on record

that may be relevant to the disability determination being made by the OP&F Medical Advisor.

(Emphasis sic.)

{¶58} Under "Section II - Initial Determination, Dr. Tzagournis states:

**[One] The Following diagnoses and whole person impairment percentage was made by the DEP physician on October 14, 2009 at the initial determination hearing:**

Percentage of the Whole Person Impairment (Combined Value) 0%

**Diagnoses:**

(a) High Blood Pressure ...
(b) Atypical Chest Pain ...
(c) Hand Paresthesias ...
(d) Migraine Headaches ...
(e) Psych (MDD, Anx. Dis. NOS) ...

(Emphasis sic.)

{¶59} Under "Section III - OP&F Medical Advisor's Recommendations," Dr. Tzagournis indicates that relator has a "5%" whole person impairment for "Hypertension" and a "10% (Temporary)" whole person impairment for "Psychiatric Symptoms with Features of Depression, Anxiety & Panic Disorder."

{¶60} Also, under Section III, the form continues with query numbers three, four, and five.

{¶61} Under query number three, Dr. Tzagournis indicates that relator has a "15% whole person impairment (Combined Value)." For his remarks, Dr. Tzagournis states:

This individual has developed psychiatric symptoms which began in the investigation of problems related to him. He had no significant formal treatment of the psychiatric disorder prior to some of his examinations. I believe the information I reviewed indicates he is disabled for performing police work, although the condition can not be classified as permanent with great certainty. One of the examiners felt that this was a temporary condition and he

should be reexamined after a period of treatment and therapy.

{¶62} Thereunder, Dr. Tzagournis remarked:

Explanation: I believe that since he has been having symptoms since October of 2009, I am unable to determine whether this condition is permanent or temporary. Therefore, my recommendation to the Board, prior to the actual meeting with this individual, he be considered temporarily disordered and he be reexamined after a period of treatment of approximately six months.

{¶63} Under query number five, Dr. Tzagournis indicates by his mark his agreement with the following pre-printed statement:

The alleged disability was *not* caused or induced by the member's employment.

Thereunder, Dr. Tzagournis explains:

Explanation: I do not find sufficient evidence to declare this an on-duty disability. Accordingly, my opinion is the disability was not caused or induced by the member's work.

(Emphasis sic.)

{¶64} Under Section V of the form, which Dr. Tzagournis signed on May 25, 2010, Dr. Tzagournis states:

The undersigned medical advisor has reviewed on May 25, 2010 the oral testimony, the evidence referenced in Section IV of the *Medical Recommendation for Appeal Hearings,* as well as any evidence handed out during the appeal hearing (listed below) in making the recommendations in Section V.

(Emphasis sic.)

{¶65} Also under Section V of the form, Dr. Tzagournis certifies as follows:

**Physician Certification** - On the date set forth below, the undersigned, a physician licensed to practice medicine, and as medical advisor to the Ohio Police & Fire Pension Fund's (OP&F) Board of Trustees certifies that he has considered the oral testimony and examined the medical information described in Section IV for the appeal hearing of the member

named in Section I and makes the diagnoses and evaluation described herein.

{¶66} 27. On May 25, 2010, the board heard relator's administrative appeal pursuant to Ohio Adm.Code 742-3-05(E). Relator appeared before the board and was sworn.

{¶67} 28. Thereafter, the board issued its final order captioned "Findings of Fact on Disability Appeal," dated May 25, 2010. Signed by the board's chair, the board's May 25, 2010 order states:

> After review of all evidence noted in the *Medical Recommendation for Appeal Hearings* of Dr. Tzagournis, dated May 25, 2010, the *Vocational Recommendation for Appeal Hearing* of Dr. Growick [sic], dated May 14, 2010, and the additional evidence presented at the appeal hearing the Board finds that Mr. Willoughby's appeal of his initial disability application be denied.

(Emphasis sic.)

{¶68} 29. By letter dated May 26, 2010, the board informed relator that his application was denied.

{¶69} 30. On July 2, 2013, relator, David H. Willoughby, filed this mandamus action.

Conclusions of Law:

{¶70} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶71} On the date that relator filed his application for a disability benefit, i.e., June 5, 2009, and at all subsequent times up to the board's May 2010 decision denying the application, former R.C. 742.38 provided:

> (C) For purposes of determining under division (D) of this section whether a member of the fund is disabled, the board shall adopt rules establishing objective criteria under which the board shall make the determination. The rules shall include standards that provide for all of the following:
>
> (1) Evaluating a member's illness or injury on which an application for disability benefits is based;

(2) Defining the occupational duties of a police officer or firefighter;

(3) Providing for the board to assign competent and disinterested physicians and vocational evaluators to conduct examinations of a member;

(4) Requiring a written report for each disability application that includes a summary of findings, medical opinions, including an opinion on whether the illness or injury upon which the member's application for disability benefits is based was caused or induced by the actual performance of the member's official duties, and any recommendations or comments based on the medical opinions;

(5) Providing for the board to consider the member's potential for retraining or reemployment.

(D) * * *

(1) As used in division (D)(1) of this section:

(a) "Totally disabled" means a member of the fund is unable to perform the duties of any gainful occupation for which the member is reasonably fitted by training, experience, and accomplishments. Absolute helplessness is not a prerequisite of being totally disabled.

(b) "Permanently disabled" means a condition of disability from which there is no present indication of recovery.

A member of the fund who is permanently and totally disabled as the result of the performance of the member's official duties as a member of a police or fire department shall be paid annual disability benefits in accordance with division (A) of section 742.39 of the Revised Code. In determining whether a member of the fund is permanently and totally disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

(2) A member of the fund who is partially disabled as the result of the performance of the member's official duties as a member of a police or fire department shall, if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual

disability benefits in accordance with division (B) of section 742.39 of the Revised Code. In determining whether a member of the fund is partially disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

(3) A member of the fund who is disabled as a result of heart disease or any cardiovascular or respiratory disease of a chronic nature, which disease or any evidence of which disease was not revealed by the physical examination passed by the member on entry into the department, is presumed to have incurred the disease while performing the member's official duties, unless the contrary is shown by competent evidence.

(4) A member of the fund who has completed five or more years of active service in a police or fire department and has incurred a disability not caused or induced by the actual performance of the member's official duties as a member of the department, or by the member's own negligence, shall if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual disability benefits in accordance with division (C) of section 742.39 of the Revised Code. In determining whether a member of the fund is disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

{¶72} In *State ex rel. Tindira v. Ohio Police & Fire Pension Fund,* 130 Ohio St.3d 62, 2011-Ohio-4677, the Supreme Court of Ohio held that former R.C. 742.38(D)(4) does not restrict benefits to members of the fund with permanent disabilities and, therefore, this court erred in concluding that former R.C. 742.38(D)(4) does not authorize benefits for temporary disabilities.

{¶73} In *Tindira,* the court issued a writ of mandamus ordering OP&F to grant the claim of Thomas J. Tindira ("Tindira") for a disability benefit under former R.C. 742.38(D)(4) and to determine the amount of benefits in accordance with R.C. 742.39(C).

{¶74} In *Tindira,* the court found that Tindira had established:  (1) he is a member of the fund who had completed five or more years of active service in a police department; (2) he incurred a disability not caused or induced by the actual

performance of his official duties as a police officer or his own negligence; (3) he is prevented by the disability from performing those duties; and (4) he has an impaired earning capacity. Based on those findings, the *Tindira* court concluded that Tindira had established his entitlement to a disability benefit.

{¶75} Effective January 7, 2013, pursuant to S.B. No. 340, the Ohio Legislature amended former R.C. 742.38 (D), which currently provides:

> As used in this division:
>
> "Totally disabled" means a member of the fund is unable to perform the duties of any gainful occupation for which the member is reasonably fitted by training, experience, and accomplishments. Absolute helplessness is not a prerequisite of being totally disabled.
>
> "Permanently disabled" means a condition of disability from which there is no present indication of recovery.
>
> (1) A member of the fund who is permanently and totally disabled as the result of the performance of the member's official duties as a member of a police or fire department shall be paid annual disability benefits in accordance with division (A) of section 742.39 of the Revised Code. In determining whether a member of the fund is permanently and totally disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.
>
> (2) A member of the fund who is permanently and partially disabled as the result of the performance of the member's official duties as a member of a police or fire department shall, if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual disability benefits in accordance with division (B) of section 742.39 of the Revised Code. In determining whether a member of the fund is permanently and partially disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.
>
> (3) A member of the fund who is permanently disabled as a result of heart disease or any cardiovascular or respiratory disease of a chronic nature, which disease or any evidence of which disease was not revealed by the physical examination passed by the member on entry into the department or

another examination specified in rules the board adopts under section 742.10 of the Revised Code, is presumed to have incurred the disease while performing the member's official duties, unless the contrary is shown by competent evidence. The board may waive the requirement that the absence of disease be evidenced by a physical examination if competent medical evidence of a type specified in rules adopted under section 742.10 of the Revised Code is submitted documenting that the disease was not evident prior to or at the time of entry into the department.

(4) A member of the fund who has five or more years of service credit and has incurred a permanent disability not caused or induced by the actual performance of the member's official duties as a member of the department, or by the member's own negligence, shall if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual disability benefits in accordance with division (C) of section 742.39 of the Revised Code. In determining whether a member of the fund is permanently disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

{¶76} With respect to R.C. 742.38(D)(4) as it currently reads, the magistrate notes that, effective January 7, 2013, the legislature added the word "permanent" to immediately precede the word "disability" in the first sentence of R.C. 742.38(D)(4) and that the legislature added the word "permanently" to immediately precede the word "disabled" in the second sentence of R.C. 742.38(D)(4).

{¶77} Presumably, the legislature's amendment of former R.C. 742.38 was a response to the *Tindira* court's holding that interpreted former R.C. 742.38(D)(4) in a manner that allows a disability benefit for temporary disability.

{¶78} Presumably, the January 7, 2013 amendment of former R.C. 742.38(B)(4) is not applicable to relator's situation. That is, relator can claim a benefit under former R.C. 742.38(B)(4).

{¶79} To reiterate, the May 25, 2010 board's order states:

After review of all evidence noted in the *Medical Recommendation for Appeal Hearings* of Dr. Tzagournis, dated May 25, 2010, the *Vocational Recommendation for Appeal Hearing* of Dr. Growick [sic], dated May 14, 2010,

> and the additional evidence presented at the appeal hearing the Board finds that Mr. Willoughby's appeal of his initial disability application be denied.

(Emphasis sic.)

{¶80} Given the board's reliance upon the reports of Dr. Tzagournis and Growick, the board was compelled to grant a disability benefit pursuant to former R.C. 742.38(D)(4).

{¶81} As earlier noted, in his May 24, 2010 report, Dr. Tzagournis states:

> This individual has developed psychiatric symptoms which began in the investigation of problems related to him. He had no significant formal treatment of the psychiatric disorder prior to some of his examinations. I believe the information I reviewed indicates he is disabled for performing police work, although the condition can not be classified as permanent with great certainty. One of the examiners felt that this was a temporary condition and he should be reexamined after a period of treatment and therapy.
>
> * * *
>
> Explanation: I believe that since he has been having symptoms since October of 2009, I am unable to determine whether this condition is permanent or temporary. Therefore, my recommendation to the Board, prior to the actual meeting with this individual, he be considered temporarily disordered and he be reexamined after a period of treatment of approximately six months.

{¶82} Also, Dr. Tzagournis indicated by his mark his agreement with the following pre-printed statement:

> The member **is not permanently incapacitated** for the performance of duties using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer - government service or fire fighter - any industry.

(Emphasis sic.)

{¶83}   Also, Dr. Tzagournis opined that "the alleged disability was *not* caused or induced by the member's employment."  (Emphasis sic.)

{¶84}   Clearly, it was the opinion of Dr. Tzagournis that relator is unable to return to police work, but he was uncertain as to whether the condition is permanent or temporary.  Under the *Tindira* court's interpretation of former R.C. 742.38(D)(4), the board cannot deny the disability benefit on grounds that Dr. Tzagournis was unable to determine whether the condition is permanent or temporary. Under former R.C. 742.38(D)(4), it does not matter whether the condition is permanent or temporary. Under either circumstance, relator is entitled to a former R.C. 742.38(D)(4) benefit.

{¶85}   As earlier noted, in his May 14, 2010 report upon which the board relied, vocational consultant Bruce Growick opined that relator has "minimal" earnings capacity damage.  In other words, relator does have some earnings capacity damage based upon Growick's report.

{¶86}   Moreover, the September 25, 2009 vocational evaluation of Robert Breslin, as quoted in the findings of fact, establishes that relator meets the requirements under former R.C. 742.38(D)(4) and that he is a member of the fund who has completed five or more years of active service in a police department.

{¶87}   Accordingly, for all of the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent to vacate its May 25, 2010 order denying relator's disability application, and to enter an order that grants relator a disability benefit under former R.C. 742.38(D)(4).

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).