[Cite as *State ex rel. Tindira v. Ohio Police & Fire Pension Fund,* 130 Ohio St.3d 62, 2011-Ohio-4677.]

THE STATE EX REL. TINDIRA, APPELLANT, *v.* OHIO POLICE & FIRE PENSION

FUND ET AL., APPELLEES.

[Cite as *State ex rel. Tindira v. Ohio Police & Fire Pension Fund,*

**130 Ohio St.3d 62, 2011-Ohio-4677.]**

*Police officer with temporary disability may receive disability benefits under R.C.*

*742.38(D)—Court of appeals' decision reversed—Writ granted to compel*

*the Ohio Police and Fire Pension Fund and its board of trustees to grant*

*officer's claim for disability benefits.*

(No. 2010-2065—Submitted August 8, 2011—Decided September 20, 2011.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-1049, 2010-Ohio-5078.

_____

**Per Curiam.**

**{¶ 1}** This is an appeal from a judgment denying a writ of mandamus to compel appellees, Ohio Police and Fire Pension Fund ("OP&F") and its board of trustees, to award disability benefits. Because the pension fund and its board abused their discretion in denying disability benefits, we reverse the judgment of the court of appeals and grant the writ.

### Facts

*OP&F Membership and Employment*

**{¶ 2}** Appellant, Thomas J. Tindira, became a member of OP&F in April 1996. Tindira was employed as a patrol officer with the city of Cleveland until he resigned in January 1997. At that time, Tindira began working as a police officer with the city of Lakewood.

**{¶ 3}** In October 2006, Tindira's girlfriend of four years told him in a phone conversation that she had had an affair and that their relationship was over.

Tindira then began experiencing psychiatric symptoms that led to his deteriorating performance at work. In May 2007, Tindira was placed on administrative leave by the Lakewood Police Department after being found unfit for duty. Tindira had been accused of sending his ex-girlfriend threatening e-mails. In May 2008, and as part of a settlement agreement concerning a pretermination hearing, Tindira resigned from his employment with Lakewood.

*Application for Disability Benefits and Initial Denial*

{¶ 4} Before he resigned from the Lakewood Police Department, Tindira filed his application for disability benefits with OP&F. In his application, Tindira listed his disabling conditions as posttraumatic stress disorder ("PTSD"), anxiety disorder, somatization disorder, major depression, and injury to his left lower abdomen. Tindira submitted the medical report by his treating physician, Timothy Fetterman, M.D., and a psychological report by Eddie E. Myers, Ed.D.

{¶ 5} Dr. Fetterman diagnosed Tindira with PTSD, anxiety, and depression; stated that these conditions limited Tindira's ability to work, interact with others, and sleep; opined that Tindira was not likely to return to duty as a police officer and could not work; and certified that Tindira had a disability from which there was no present indication of recovery.

{¶ 6} Myers diagnosed Tindira with major depression with psychotic features, anxiety disorder, somatization disorder, and narcissistic personality disorder. Myers described Tindira's symptoms following the breakup with his ex-girlfriend, as related to him by Tindira, as follows:

{¶ 7} "Since that brutal break-up, Detective Tindira has been unable to function normally. He has been unable to sleep and has reported numerous physical problems, such as a severe gastro-intestinal pain that remains intense and constant. More recently, he has reported feeling as if there were a tumor on the side of his neck, making it very difficult for him to swallow. He frequently describes the electric shock he felt in his brain when he got the disturbing news of

her affair. He feels that his brain was damaged by the intense flashes of pain. Only recently has he been able to identify the deep rage he has felt and the difficulty he has had in controlling the impulse to do harm to his former girlfriend and her current lover. Both the girl and the broken relationship are the center of his obsessions. He has tried to regain his emotional balance since that time, but has not been successful in moving from his position of being a victim to a devastating event. As a part of therapy, he has tried to resume interest in golfing, a sport he once enjoyed. He finds no pleasure in any activity that he engages in. He has dated several other girls since the break up, but reports being unable to perform sexually with even the most attractive and willing partners. He cannot understand how his former girl friend could have done such a thing to him and why he has been unable to move on. Unable to sleep, with his sex life destroyed, and a collection of increasingly painful physical symptoms, he reports that he feels like he has become a victim of a train wreck."

{¶ 8} Myers concluded that Tindira "is totally and permanently disabled from functioning as a police officer or in any other occupation that by reason of experience or training he might be otherwise qualified. Detective Tindira is living in his own form of hell and neither medications nor therapy has been able to reconstruct the defenses to allow him to return to any form of police duty."

{¶ 9} OP&F ordered independent medical and vocational evaluations of Tindira. Sylvester Smarty, M.D., conducted a psychiatric evaluation and diagnosed Tindira as having major depressive disorder, single episode, moderate, without psychotic features, and anxiety disorder. Dr. Smarty found that Tindira's general prognosis was good:

{¶ 10} "Given that Mr. Tindira has never had any psychiatric problems prior to breaking up with his girlfriend, it is my opinion, with reasonable medical certainty, that the prognosis for his psychiatric conditions is good. However, his prognosis is dependent on whether he receives adequate treatment for his

conditions. His treatment should involve psychotherapy to help him deal with the psychic injury that he suffered by the breakup and to help him move forward and reestablish new relationships."

{¶ 11} Dr. Smarty concluded that Tindira "is presently NOT disabled from the performance of the duties of a police officer by his psychiatric symptoms." (Capitalization sic.) Dr. Smarty further opined that Tindira had a whole-person impairment of 4 percent as a result of his psychiatric conditions.

{¶ 12} W. Kent Soderstrum, M.D., conducted a physical examination of Tindira and determined that he had no physical impairment from work-related injuries to his left lower abdomen and left ankle. Dr. Soderstrum concluded that from a physical standpoint, Tindira "is capable of safely performing all of the aspects of his current job description as a police officer."

{¶ 13} In their vocational evaluation of Tindira, Paul T. Kijewski and Michael J. Bryan determined that Tindira was temporarily incapacitated from performing his duties as a police officer and that the impairment reduced his earning capacity:

{¶ 14} "In conclusion, we find that Mr. Tindira is not capable of performing the duties of police officer at the present time due to his emotional difficulties. However, we see his condition as temporary. His mental health may improve with ongoing therapy and medication, which he is currently receiving. In a sense, he does have transferable skills and vocational options. However, all of these jobs have wage levels [that are] considerably less than he has earned as a police officer and detective for the Lakewood Police Department."

{¶ 15} A disability-evaluation panel concluded that based on the evidence, Tindira had a 5 percent whole-person impairment and was not incapacitated for the performance of his duties. The panel recommended that Tindira's application for disability benefits be denied. In March 2008, the OP&F Board of Trustees

found that Tindira was not disabled and denied his application for disability benefits.

{¶ 16} Tindira appealed from OP&F's initial determination and submitted additional reports from his treating physicians, Dr. Fetterman and Francis L. McCafferty, M.D. Dr. Fetterman diagnosed Tindira as suffering from a major depressive disorder, single episode, which had been severe, with psychotic features, somatization disorder, anxiety disorder, and a mixed personality disorder, and he noted that Tindira was taking multiple medications for these conditions. Dr. Fetterman did not feel that Tindira could do his work as a police officer. Dr. Fetterman also reported that an MRI revealed that Tindira had a "broad based disk bulge with a small central disk protrusion at the L5 and S1 level," which "definitely would [a]ffect his duties to perform as a policeman."

{¶ 17} Dr. McCafferty diagnosed Tindira with "Major Depressive Disorder, Severe, with Psychotic Features, with elements of a Delusional Disorder and Post Traumatic Stress Disorder, Personality Disorder N.O.S." Dr. McCafferty noted that Tindira had shown only a very slight improvement after psychotherapy and medication management. Dr. McCafferty concluded that based on Tindira's psychiatric problems alone, he had a whole-person impairment of 65 percent. He also determined that Tindira was "severely disturbed psychologically," that he "continues to be delusional," and that he "will never be able to function as a police officer."

{¶ 18} OP&F forwarded the new evidence submitted by Tindira in support of his appeal to the physicians and vocational expert who had previously conducted independent evaluations of Tindira and asked them to report whether their original opinions on his disability-benefits claim had changed based on the new evidence. Dr. Smarty increased his assessment of Tindira's percentage of whole-person impairment from 5 percent to 20 percent and changed his opinion regarding the impact of Tindira's psychiatric symptoms on his ability to function

as a police officer to conclude that his "psychiatric symptoms at the present time will interfere with his ability to function effective[ly] as a police officer." Nevertheless, Dr. Smarty retained his opinion that Tindira is not permanently disabled from his work as a police officer:

{¶ 19} "There is no evidence that suggests that his psychiatric conditions were caused by any stressor arising from his work as a police officer. Rather, his psychiatric conditions are the result of his break-up with his girlfriend and the aftermath, especially following the consequences he incurred by threatening her. Generally, it would be expected that his symptoms will improve with treatment (especially psychotherapy) and the passage of time. As such, he should be reevaluated in 1 year to determine whether he remains impaired by his psychiatric conditions."

{¶ 20} Dr. Soderstrum found no new objective evidence to support Tindira's claim of a new physical injury to his back and did not change his previous opinion that Tindira was not physically disabled.

{¶ 21} In an addendum to his previous vocational evaluation, Kijewski changed his previous conclusion that Tindira was temporarily incapacitated and determined that Tindira was permanently incapacitated:

{¶ 22} "In the original report, the conclusion was that Mr. Tindira was incapacitated from performing the duties of police officer, but his condition was temporary. In light of Dr. McCafferty's report, it appears that after four months of intensive psychotherapy, Mr. Tindira remains severely disturbed and delusional. He was clearly not responding to treatment in any significant way. While there is always hope for improvement, it appears highly doubtful that he, in light of the information presented by Dr. McCafferty, will ever improve to the point where he can resume the duties of police officer. It is now my finding that Mr. Tindira is permanently incapacitated from performing the duties of police officer due to his emotional difficulties."

6

{¶ 23} Kijewski further concluded that it was highly doubtful that Tindira's emotional state would improve to the point where other occupations would be feasible. Another vocational consultant, Bruce S. Growick, Ph.D., provided OP&F with his assessment that the damage to Tindira's earning capacity was minimal.

{¶ 24} The OP&F medical advisor, Manuel Tzagournis, M.D., reviewed the pertinent evidence and diagnosed Tindira as suffering from major depression resulting in a whole-person impairment of 5 percent and lumbar sacral strain with MRI evidence of disk disease resulting in a whole-person impairment of 2 percent. Dr. Tzagournis concluded that Tindira is temporarily incapacitated for the performance of his duties as a police officer and that the disability was not caused or induced by his employment as an officer. More specifically, he concluded that Tindira "has a depression that is likely to be reversible, however it has incapacitated him on a temporary basis to the extent that he has been on several psychiatric medications, was hospitalized once in the past, and has provided new medical evidence of the difficulties he has had. * * * The severity of the depression appears to be severe enough that he is not capable of working as a police officer. It is likely that this is a temporary disability and he will recover gradually over the next year."

{¶ 25} In September 2008, the OP&F Board of Trustees determined that Tindira was disabled, but it denied his claim for disability benefits. The board specified that it had based its denial on the medical recommendation of Dr. Tzagournis, the vocational recommendation of Dr. Growick, and certain other evidence that had been submitted in support of Tindira's appeal.

{¶ 26} In November 2009, Tindira filed a complaint in the Court of Appeals for Franklin County for a writ of mandamus to compel appellees, OP&F and its board of trustees, to vacate the board's denial of his claim for disability benefits and to award him disability benefits and attorney fees. Appellees

submitted an answer, and the parties submitted the administrative record and briefs.  In October 2010, the court of appeals denied the writ.

{¶ 27} This cause is now before the court upon Tindira's appeal as of right.

## Legal Analysis

### *Mandamus*

{¶ 28} "[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14.  Because the final OP&F board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in denying disability benefits.  See, generally, *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10.  " 'An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.' "  Id., quoting *State ex rel. Stiles v. School Emps. Retirement Sys.*, 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13.

### *Stating the Basis for Its Denial of Disability Benefits*

{¶ 29} Tindira first claims that the board abused its discretion by failing to state the basis for its denial of disability benefits.

{¶ 30} "In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus."  *State ex rel. Lecklider v. School Emps. Retirement Sys.*, 104 Ohio St.3d 271, 2004-Ohio-6586, 819 N.E.2d 289, ¶ 23.  Public-employee pension systems and their boards have no duty to state the basis for their decision denying disability benefits when no statute or duly adopted administrative rule requires it.  See, generally, *Pipoly*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18; *Lecklider* at ¶ 23.

**{¶ 31}** Because Tindira cites no statute or rule imposing any duty on the part of the OP&F Board of Trustees to state the basis for its decision denying his application for disability benefits, this court cannot create that duty.

**{¶ 32}** Moreover, this is not a case in which the board relied on general statements made by doctors that Tindira could engage in "some" type of gainful employment. Consequently, his citation to *Kinsey v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1990), 49 Ohio St.3d 224, 551 N.E.2d 989,[1] does not support his request.

**{¶ 33}** Therefore, the OP&F Board did not abuse its discretion insofar as its decision could be construed as not specifying the basis for it.

*Temporary Disability Benefits*

**{¶ 34}** Tindira next argues that the court of appeals erred in holding that he was not entitled to temporary disability benefits under R.C. 742.38(D)(4).

**{¶ 35}** R.C. 742.38(D) provides:

**{¶ 36}** "(1) As used in division (D)(1) of this section:

**{¶ 37}** "(a) 'Totally disabled' means a member of the fund is unable to perform the duties of any gainful occupation for which the member is reasonably fitted by training, experience, and accomplishments. Absolute helplessness is not a prerequisite of being totally disabled.

**{¶ 38}** "(b) 'Permanently disabled' means a condition of disability from which there is no present indication of recovery.

**{¶ 39}** "A member of the fund who is permanently and totally disabled as the result of the performance of the member's official duties as a member of a police or fire department shall be paid annual disability benefits in accordance

---

1. In *Kinsey*, at the syllabus, we held, "In determining whether a person is totally disabled for purposes of the Police and Firemen's Disability and Pension Fund of Ohio, the board of trustees of the fund cannot rely on general statements made by doctors either in a written report or in preprinted forms supplied by the board, which state that a member can engage in 'some' type of gainful employment. The board must state that it considered the member's training, experience, and accomplishments in determining whether he can engage in other gainful employment."

with division (A) of section 742.39 of the Revised Code. In determining whether a member of the fund is permanently and totally disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

{¶ 40} "(2) A member of the fund who is partially disabled as the result of the performance of the member's official duties as a member of a police or fire department shall, if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual disability benefits in accordance with division (B) of section 742.39 of the Revised Code. In determining whether a member of the fund is partially disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination.

{¶ 41} "(3) A member of the fund who is disabled as a result of heart disease or any cardiovascular or respiratory disease of a chronic nature, which disease or any evidence of which disease was not revealed by the physical examination passed by the member on entry into the department, is presumed to have incurred the disease while performing the member's official duties, unless the contrary is shown by competent evidence.

{¶ 42} "(4) A member of the fund who has completed five or more years of active service in a police or fire department and has incurred a disability not caused or induced by the actual performance of the member's official duties as a member of the department, or by the member's own negligence, shall if the disability prevents the member from performing those duties and impairs the member's earning capacity, receive annual disability benefits in accordance with division (C) of section 742.39 of the Revised Code. In determining whether a member of the fund is disabled, the board shall consider standards adopted under division (C) of this section applicable to the determination."

{¶ 43} Under R.C. 742.38(C), "[f]or purposes of determining under division (D) of this section whether a member of the fund is disabled, the board shall adopt rules establishing objective criteria under which the board shall make the determination." The OP&F Board of Trustees promulgated Ohio Adm.Code 742-03-05 pursuant to R.C. 742.38(C), and in section (A)(8) of that rule defined "partial disability" to mean "a condition of disability with respect to which the board finds the applicant is prevented from performing the member's official police or fire duties and member's earnings capacity is impaired."

{¶ 44} For the following reasons, R.C. 742.38(D)(4) is not limited to authorizing disability benefits for permanent disability.

{¶ 45} First, the plain language of R.C. 742.38(D)(4) is not restricted to benefits for permanent disability. In analyzing the pertinent statutory provisions, "we determine the legislative intent by reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 18. To be entitled to a disability benefit under this provision, the applicant must prove that he or she (1) is a member of the fund who has completed five or more years of active service in a police or fire department, (2) has incurred a disability not caused or induced by the actual performance of the member's official duties as a member of the department or by the member's own negligence, (3) is prevented by the disability from performing his or her duties, and (4) has an impaired earning capacity because of the disability. Nothing in the statutory language suggests that the disability entitling the member to benefits must be permanently and totally disabling.

{¶ 46} Second, when the General Assembly has intended that a member of OP&F be restricted to benefits based on *permanent* and total disability, it has specifically so provided. For example, in R.C. 742.38(D)(1), benefits are authorized for a member of the fund who is "permanently and totally disabled as

the result of the performance of the member's official duties as a member of a police or fire department." Because the General Assembly did not employ that same limiting language in R.C. 742.38(D)(4), we must presume that it did not intend to similarly restrict disability benefits authorized by that section.

{¶ 47} Third, the statute authorizes partial-disability benefits in certain circumstances. See, e.g., R.C. 742.38(D)(2); see also Ohio Adm.Code 742-3-05(A)(8).

{¶ 48} Fourth, this construction of R.C. 742.38(D)(4) comports with the general rules of statutory construction by furthering the purpose behind the disability provisions. See, e.g., *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.*, 97 Ohio St.3d 198, 2002-Ohio-5806, 777 N.E.2d 259, ¶ 21. The specified legislative purpose of OP&F is to provide "disability benefits and pensions to members of the fund and their surviving spouses, children, and dependent parents." R.C. 742.02. Insofar as the language in R.C. 742.38(D)(4) might be considered ambiguous regarding whether it authorizes benefits for temporary disabilities, "[a]mbiguous statutory provisions [in pension statutes] must be construed liberally in favor of the interests of the public employees and their dependents that the pension statutes were designed to protect." *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486. As noted by Tindira, once a member receives disability benefits, including partial-disability benefits, he remains subject to medical treatment and annual medical examinations to determine whether he is entitled to continue to receive those benefits. See R.C. 742.40 and Ohio Adm.Code 742-3-10.

{¶ 49} Finally, appellees' reliance on purported definitions from the fifth edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" does not require a different result. Under Ohio Adm.Code 742-3-05(B)(2), "[i]n evaluating a member's disability, as provided by

law, medical impairment and eligibility for disability retirement benefits, the DEP [Disability Evaluation Panel] and the [OP&F] board will use the official duties provided by the employer, *but in the event such information is not provided by the employer or does not clearly define the applicable job duties*, the board and the DEP shall use the criteria contained in the 'guides,' the occupational characteristics adopted by the board and the criteria set forth in division (D) of section 742.38 of the Revised Code." (Emphasis added.) "Guides" means "the American medical association's 'Guides to the Evaluation of Permanent Impairment, fifth edition,' and such other subsequent editions adopted by the board from time to time, whether in whole or in part." Ohio Adm.Code 742:3-05(A)(9).

{¶ 50} Appellees rely on a purported reference[2] from the foregoing guide to support their argument that pension-fund members with temporary disabilities do not qualify for benefits under R.C. 742.38(D)(4). But the guide could be used by the board only if information about Tindira's job duties as a Lakewood police officer either was not provided by Lakewood or did not clearly define his duties. Here, the information about the job duties was provided to the board by Lakewood, and the duties were clearly defined. In fact, neither the OP&F nor its board of trustees ever suggested otherwise during the administrative proceedings, in the court of appeals' case, or in this appeal.

{¶ 51} More important, the board can consider only *applicable* standards adopted by it to determine the requisite disability under R.C. 742.38(D)(4), and as previously discussed, the plain language of the statutory provision does not restrict benefits to members with permanent disabilities.

---

2. Although appellees did not submit a copy of the portion of the book that they cite and it is not contained in the court of appeals' record, it appears that they are correct that according to the American Medical Association's "Guides to the Evaluation of Permanent Impairment" (5th Ed.2001) 2, "[t]he term *impairment* in the *Guides* refers to *permanent impairment*, which is the focus of the Guides." (Emphasis sic.)

{¶ 52} Therefore, the court of appeals erred in concluding that R.C. 742.38(D)(4) does not authorize benefits for temporary disabilities.

{¶ 53} Moreover, in asserting that the OP&F Board of Trustees abused its discretion in denying disability benefits to Tindira, Tindira established that (1) he is a member of the fund who had completed five or more years of active service in a police department (his time at the Lakewood and Cleveland police departments), (2) he incurred a disability not caused or induced by the actual performance of his official duties as a police officer with the Lakewood Police Department or his own negligence (his psychiatric condition caused by his breakup with his girlfriend), (3) he is prevented by the disability from performing those duties (as established by the evidence cited in the board's decision, including Dr. Tzagournis's conclusion that he is temporarily incapacitated from performing his job as a police officer), and (4) he has an impaired earning capacity because of the disability (as shown by (a) Kijewski's conclusion, after performing a vocational evaluation, that Tindira was incapacitated from  performing his duties as police officer and that it was highly doubtful that his emotional state would improve to the point that he could apply any transferable skills in a different occupation and (b) Dr. Growick's conclusion, after performing a vocational evaluation, that Tindira had at least a minimal impairment of his earning capacity due to his disability).  Thus, under R.C. 742.38(D)(4), Tindira established his entitlement to disability benefits.

{¶ 54} Therefore, OP&F and its board abused their discretion in denying Tindira's application for disability benefits.

*Oral Argument*

{¶ 55} Tindira requests oral argument.  We deny the request because the parties' briefs are sufficient to resolve this appeal.  *State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 65.

**Conclusion**

**{¶ 56}** Based on the foregoing, the court of appeals erred in denying the requested extraordinary relief in mandamus. We reverse the judgment of the court of appeals and grant the writ of mandamus to compel OP&F and its board of trustees to grant Tindira's claim for disability benefits. The board of trustees shall determine the amount of benefits in accordance with R.C. 742.39(C).

Judgment reversed

and writ granted.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., dissents.

_____

Paul M. Friedman and Michael P. O'Malley, for appellant.

Michael DeWine, Attorney General, and Theodore L. Klecker, Assistant Attorney General, for appellees.

_____