[Cite as *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 2016-Ohio-8270.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Donald A. Wegman,  :

        Relator,  :

                                No.  16AP-112

v.  :

                        (REGULAR CALENDAR)

Ohio Police & Fire Pension Fund,  :

        Respondent.  :

D E C I S I O N

Rendered on December 20, 2016

**On brief:** *Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

**On brief:** *Michael DeWine,* Attorney General, *John J. Danish*, and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1}  Relator, Donald A. Wegman, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Police & Fire Pension Fund ("OP&F"), to reconsider its decision to award him a 12 percent off-duty disability, and to order OP&F to increase the award to find that his right shoulder condition and psychological condition are disabling.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued the appended decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. Relator has filed objections to the

magistrate's decision, arguing that the magistrate erred in finding that the file review reports relied on by OP&F constituted some evidence, and by failing to properly apply Ohio Adm.Code 742-3-05(B)(6) to the application.

{¶ 3} Relator's objections are somewhat interrelated and will be considered together. Relator first challenges the magistrate's determination that the file reviews conducted by Dr. James Talmadge and Dr. Gregory Jewell constitute some evidence on which OP&F could rely to deny disability for relator's right shoulder and psychological conditions.

{¶ 4} With respect to the shoulder condition, relator contends that OP&F's own reports from Dr. Merris Young and Dr. Kent Soderstrum support disabling impairment for the right shoulder. As noted by the magistrate, however, Dr. Talmadge concluded that relator had 0 percent impairment for his right shoulder based in part on his determination that Dr. Young's rating for relator's right shoulder was incorrect. The magistrate agreed with Dr. Talmadge's explanation that Dr. Young failed to consider that relator's right shoulder measurements were basically equivalent to his left shoulder measurements. On review, we find that the record contains some evidence to support OP&F's conclusion that relator's right shoulder was not disabling.

{¶ 5} With respect to the psychological evidence, relator argues that the only reports on file are those of his treating mental health professionals and OP&F's report from Thomas Evans, Ph.D. Relator maintains that the evidence supports an on-duty disability award of 10 percent. According to relator, Dr. Jewell is not a mental health professional and he failed to accept the factual findings of the examining physicians. In a related argument, relator contends the magistrate improperly permitted OP&F to rely on the opinion of its medical advisor over the opinions of its physicians in contravention of Ohio Adm.Code 742-3-05(B)(6).

{¶ 6} The magistrate noted that Dr. Evans examined relator and found a 10 percent impairment for anxiety disorder; Dr. Evans also indicated, however, that relator may have been exaggerating the extent of his conditions. Dr. Jewell conducted a file review of the evidence, including the report of Dr. Evans, and concluded that relator's psychological condition did not impair him.

{¶ 7}  While relator contends that Dr. Jewell failed to explain his reasoning, OP&F is not required to state the basis for a denial of disability benefits. *State ex rel. Tindira v. Ohio Police & Fire Pension Fund,* 130 Ohio St.3d 62, 2011-Ohio-4677, ¶ 30 ("Public-employee pension systems and their boards have no duty to state the basis for their decision denying disability benefits when no statute or duly adopted administrative rule requires it.").  In reaching its determination, OP&F is "permitted to accept the findings" of physicians "but reject their conclusions." *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund,* 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 9.  In a similar vein, " '[u]nder R.C. 742.38 and Ohio Adm.Code 742-3-05, the OP&F board is vested with the exclusive authority to evaluate the weight and credibility of the medical evidence in determining a member's entitlement to disability-retirement benefits.' " *State ex rel. Bell v. Ohio Police & Fire Pension Fund,* 10th Dist. No. 11AP-628, 2012-Ohio-6153, ¶ 9, quoting *Kolcinko* at ¶ 7.  Further, there is no requirement that OP&F accept or credit the opinion of any particular physician. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 26.  With respect to relator's contention that Dr. Jewell was not competent to render an opinion concerning the psychological condition, the magistrate noted that "[n]either the Ohio Revised Code nor the Ohio Administrative Codes require that [respondent] have advisors who specialize in both physical and psychological disorders."  (Mag. Decision at ¶ 49.)  On review, we find no error with the magistrate's determination that the report of Dr. Jewell constitutes some evidence on which OP&F could rely with respect to the psychological condition.

{¶ 8}  Following an independent review of this matter, we find the magistrate has properly determined the pertinent facts and applied the appropriate law.  We therefore overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN, P.J., and TYACK, J., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Donald A. Wegman, | : | |
| Relator, | : | |
| v. | : | No. 16AP-112 |
| Ohio Police & Fire Pension Fund, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on July 29, 2016

---

*Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish* and *Mary Therese J. Bridge,* for respondent.

---

### IN MANDAMUS

{¶ 9} Relator, Donald A. Wegman, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Police & Fire Pension Fund ("OP&F"), to reconsider its decision which awarded him a 12 percent off-duty disability, and ordering OP&F to increase the award and find that his right shoulder condition and his psychological condition are both work related and are disabling.

Findings of Fact:

{¶ 10} 1. Relator began working as a firefighter for Anderson Township beginning in 1997, starting off as a volunteer. In February 2001, he began full time employment as a firefighter/paramedic for Anderson Township.

{¶ 11} 2. Relator voluntarily resigned his position on March 1, 2014.

{¶ 12} 3. In February 2015, relator submitted an application for disability benefits with OP&F. On his application, relator listed the following disabling medical conditions which prevent him from performing his job as a firefighter: (1) left knee (April 30, 2014); (2) cardiac (October 15, 2011); (3) right shoulder (January 12, 2012); (4) vision; (5) hearing; and (6) his back. Relator submitted medical records in support of his application.

{¶ 13} 4. OP&F had relator examined by Merris T. Young, M.D., who completed a Report of Medical Evaluation by an OP&F Appointed Physician and authored a report, both of which are dated March 24, 2015. Dr. Young assessed the following percentage of impairment of the whole person for relator's conditions:

> Left Knee, 11%
> Heart, 10%
> Right Shoulder, 11%
> Eyes, 5%
> Hearing, 0%
> Lumbar Back, 5%
> Thoracic Back, 0%

{¶ 14} Dr. Young opined that relator's ability to sit was unrestricted and that he could stand and walk, each for 0 to 3 hours. Dr. Young opined that relator was unrestricted in his ability to lift or carry up to 10 pounds, lift or carry between 10 and 20 pounds for 3 to 5 hours, and lift or carry between 20 and 50 pounds for 0 to 3 hours. He further opined that relator could push, pull, or otherwise move less than 10 pounds for 5 to 8 hours, 10 to 20 pounds for 3 to 5 hours, and 20 and 50 pounds for 0 to 3 hours. Relator could occasionally climb stairs, but was precluded from climbing ladders, using foot controls, crouching, stooping, bending, kneeling, and reaching overhead. Relator could reach at waist and knee level for 3 to 5 hours a day and floor level 0 to 3 hours a day.

{¶ 15} In his report, Dr. Young discussed relator's conditions. Dr. Young indicated that relator first injured his back in 1996 when he was involved in a serious motor vehicle accident. Relator injured his back again in March 2009 when he fell off the back of a fire truck, and in November 2013 when he fell down some stairs while at work. Dr. Young indicated that relator has some back discomfort every day; however, he experiences no radiation of pain into his lower extremities. Relator injured his right shoulder in 2012, underwent surgery in 2012, and indicates he has a lack of strength in that shoulder. Dr. Young indicated that relator has a three-year history of hearing loss and sees well with

glasses, but not well without glasses. Relator informed Dr. Young that, in August 2011, he experienced chest pain and ultimately learned that he had a supraventricular tachycardia (SVT). Relator indicates that this condition causes him to become short of breath with exertion. Relator injured his knee in April 2014, after he had retired. He slipped and tore his left quadriceps muscle and needed surgery. He informed Dr. Young that he still participates in therapy two times per week, that wearing a knee brace helps, and that his knee sometimes gives out and causes him to fall. Dr. Young provided the following physical findings with regard to relator's right and left shoulders:

> Flexion was 144 degrees to the right and 153 degrees to the left. Extension was 34 degrees to the right and 30 degrees to the left. Abduction was 138 degrees to the right and 140 degrees to the left. Adduction was 43 degrees to the right and 38 degrees to the left. External rotation was 63 degrees on the right and 87 degrees on the left. Internal rotation was 50 degrees on the right and 58 degrees on the left. * * *

> The right shoulder appeared to have some atrophy. Slight left scapular winging was elicited. * * * Posterior reaching was decreased bilaterally. * * * Right shoulder movements were performed in a guarded manner. Palpable crepitus was appreciated over the right greater than left shoulder. Shoulder strength was normal. Shoulder Shrug was normal Drop Arm test was negative. Empty can test was negative. Neer's and Hawkins-Kennedy signs for impingement were negative bilaterally.

{¶ 16} Dr. Young opined that, including all the conditions, relator had a 36 percent whole person impairment.

{¶ 17} 5. Robert Breslin prepared a vocational evaluation for OP&F and concluded that relator was disabled from his position as a firefighter/paramedic, and was limited to sedentary work activity at best.

{¶ 18} 6. A file review was completed by James Talmadge, M.D., who prepared a recommendation for the disability evaluation panel and authored a report, both dated April 29, 2015. Based on his review of the records, Dr. Talmadge determined that only one of the alleged conditions was disabling, relator's left knee tendon rupture, that this condition was not duty-related, and that resulted in an impairment of four percent. Dr. Talmadge opined that relator's right shoulder injury and his lower back injury were both duty-related and he had a zero percent whole person impairment for the right shoulder

and a five percent whole person impairment for his lower back. Dr. Talmadge opined further that relator's cardiac condition was neither disabling nor duty-related and resulted in a ten percent impairment and his hearing and vision conditions were neither disabling nor duty-related, and did not result in any percent of impairment. Ultimately, Dr. Talmadge opined that relator had a four percent whole person impairment due to the disabling conditions and that he was disabled due to the off-duty injury.

{¶ 19} In his report, Dr. Talmadge explained that Dr. Young's ratings for relator's left knee and right shoulder were done incorrectly. With regard to his left knee condition, Dr. Talmadge explained that it would be a ten percent lower extremity impairment, which was equivalent to a four percent whole person impairment. With regard to relator's shoulder, Dr. Talmadge stated that Dr. Young's rating was incorrect because he failed to consider that relator's left shoulder measurements were:

> [B]asically equivalent (*within measurement error*), and that if both shoulders were rated, as per the instructions * * *, both would have the same impairment, so the right shoulder would not qualify for an injury related impairment.

(Emphasis sic.)

{¶ 20} 7. The disability evaluation panel committee recommended that OP&F grant relator an eight percent impairment.

{¶ 21} 8. Michael A. Klein, Ph.D., prepared a vocational recommendation dated May 4, 2015 opining that the impairment was moderate.

{¶ 22} 9. In a letter dated May 20, 2015, OP&F notified relator that he had been granted an off-duty disability in the amount of eight percent.

{¶ 23} 10. Relator appealed indicating that he would present additional medical information regarding his cardiac, right shoulder, and left knee conditions. That information included the August 24, 2015 progress note of Denver Thomas Stanfield, M.D., indicating that relator's shoulder range of motion was limited secondary to pain, that while his strength was good below shoulder level, as he reached above his shoulder, his strength decreased. Dr. Stanfield indicated there was no evidence of instability, but there were positive impingement signs with cross-body abduction, and crepitus was noted. Regarding treatment, Dr. Stanfield indicated that aggressive treatment was not warranted.

{¶ 24} Relator also included the September 2, 2015 report of Terry Sky Glendening, Ph.D., his treating psychologist, who opined that relator's work-related anxiety evolved into post-traumatic stress disorder, that his difficulties were ongoing, showed no sign of remitting, and compromised his ability to obtain new employment.

{¶ 25} 11. OP&F referred relator for medical evaluation to W. Kent Soderstrum, M.D., who completed the report of medical evaluation by an OP&F Appointed Physician form, and authored a report, both dated October 16, 2015. Dr. Soderstrum opined that relator's heart condition of SVT resulted in a ten percent whole person impairment, his right shoulder resulted in a 9 percent whole person impairment, his low back resulted in a 5 percent whole person impairment, and his left knee resulted in a 10 percent whole person impairment, for a final estimated whole person impairment of 31 percent. Dr. Soderstrum indicated that relator could sit and stand for 5 to 8 hours a day and walk for 3 to 5 hours a day; was unrestricted in his ability to lift up to 20 pounds, and could lift between 20 and 50 pounds for 3 to 5 hours a day; was unrestricted in his ability to push/pull or otherwise move up to 20 pounds and could lift between 20 and 50 pounds for 3 to 5 hours a day; relator could occasionally climb stairs, but could not climb ladders nor use foot controls; relator was unrestricted in his ability to handle items and to reach at waist level, could reach at knee level for 3 to 5 hours a day, and could reach both overhead and floor level for 0 to 3 hours a day.

{¶ 26} 12. OP&F also had relator examined by Thomas Evans, Ph.D. In his October 23, 2015, Dr. Evans opined that relator's dysthymic disorder resulted in a ten percent impairment and his anxiety disorder NOS also resulted in a ten percent whole person impairment for a final estimated whole person impairment of ten percent. Dr. Evans did note that testing indicated an element of exaggeration in certain complaints and problems, but that it was to a degree that render the results uninterpretable. Dr. Evans concluded that both relator's dysthymic disorder and his anxiety disorder were directly caused by official duties as a firefighter/EMT, and that the dysthymic disorder was not disabling, but the anxiety disorder was.

{¶ 27} 13. A vocational recommendation by Bruce S. Growick, M.D., determined that relator's impairment of earning capacity was moderate.

{¶ 28} 14. OP&F medical advisor, Gregory Jewell, M.D., prepared a recommendation dated December 15, 2015. Dr. Jewell opined that relator's left

knee/quadriceps rupture resulted in a six percent impairment which was disabling, that his cardiac arrhythmia resulted in a nine percent impairment, but was not disabling, that his right shoulder resulted in a nine percent impairment which is not disabling, and psychological conditions resulted in a zero percent impairment.

{¶ 29} In the section of the report which requests additional remarks, Dr. Jewell noted that there was no evidence of significant treatment for relator's shoulder condition following his resignation from the department.

{¶ 30} 15. OP&F prepared findings of fact on disability appeal dated December 15, 2015, granted relator a 12 percent award and further noted that the award was based on the determinations of Dr. Jewell and the vocational recommendation of Dr. Growick who opined that relator had a moderate to severe wage loss.

{¶ 31} 16. In a letter dated December 16, 2015, relator was notified that he had been granted an award of 12 percent.

{¶ 32} 17. Thereafter, relator filed the instant mandamus action.

Conclusions of Law:

{¶ 33} In arguing that OP&F abused its discretion by awarding him a 12 percent disability, relator asserts that this decision is not supported by some evidence. Specifically, relator asserts that the medical evidence demonstrates that his right shoulder injury and his psychological conditions are disabling, and OP&F abused its discretion by finding otherwise. For the reasons that follow, the magistrate disagrees.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} Relator must show by plain, clear, and convincing evidence that he has a clear legal right to PTD retirement, that OP&F has a clear legal duty to grant him PTD retirement rather than a permanent partial disability retirement, and that he has no adequate remedy at law. *See State ex rel. Pressley v. Indus. Comm.,* 11 Ohio St.2d 141 (1967) and *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees,* 72 Ohio St.3d 62, 64, 1995 Ohio 172 (1995). A clear legal right exists where OP&F abuses its discretion by entering an order which is not supported by some evidence.

*See Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio,* 49 Ohio St.3d 224 (1990).

{¶ 36} "Mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219. Because the final OP&F decision is not appealable, mandamus is available to correct an abuse of discretion by OP&F in denying disability benefits. *See, generally, State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, ¶ 10. "'An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.'" *Id.,* quoting *State ex rel. Stiles v. School Emps. Retirement Sys.,* 102 Ohio St.3d 156, 2004-Ohio-2140.

{¶ 37} "In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." *State ex rel. Lecklider v. School Emps. Retirement Sys.,* 104 Ohio St.3d 271, 2004-Ohio-6586, ¶ 23. Public-employee pension systems and their boards have no duty to state the basis for their decision denying disability benefits when no statute or duly adopted administrative rule requires it. *See, generally, Pipoly,* ¶ 18; *Lecklider,* ¶ 23.

{¶ 38} Under R.C. 742.38 and Ohio Adm.Code 742-3-05, OP&F is vested with the exclusive authority to evaluate the weight and credibility of the medical evidence in determining a member's entitlement to disability retirement benefits. *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund,* 131 Ohio St.3d, 2012-Ohio-46, ¶ 17. OP&F board and the Disability Evaluation Panel ("DEP") must consider all competent evidence and must rely on the medical opinions of the DEP physicians and OP&F's medical advisor, who have given due consideration of medical and other evidence presented to OP&F. Ohio Adm.Code 742-3-05(B)(4) and (6). OP&F is permitted to accept the findings of doctors and yet reject their conclusions. Under the appropriate standard of review, the presence of contrary evidence is immaterial if there is evidence in support of the board's findings. *See State ex rel. Spohn v. Indus. Comm.,* 115 Ohio St.3d 329, 2007-Ohio-5027.

{¶ 39} As an initial matter, the magistrate finds these disability cases to be extremely frustrating. While there is a statutory requirement on the commission to cite the evidence upon which it relies and provide a brief analysis, there is no statutory requirement on OP&F to do the same. Ohio's police and firefighters are left wondering

why they are denied disability benefits and their only opportunity to challenge the denial is by way of a mandamus action.  Provided there is some evidence in the record, this court must find no abuse of discretion.  When cursory recommendations by medical advisors are found to constitute some evidence, Ohio's police and firefighters are done a grave injustice.

{¶ 40} Relator first argues that the medical evidence presented establishes that his right shoulder injury is disabling.  Specifically, relator argues that the reports from OP&F physicians Drs. Young and Soderstrum, and the August 24, 2015 report of Dr. Stanfield, clearly establish this.

{¶ 41} Dr. Young determined that relator's right shoulder injury warranted an 11 percent impairment and indicated that relator would be precluded from reaching overhead.  Dr. Young had the opportunity to note whether or not this restriction for overhead lifting was limited to the right upper extremity or the left upper extremity or both, yet he failed to do so.  With regard to relator's ability to lift, carry, push, pull or otherwise move items, Dr. Young found that relator could manage up to 50 pounds for 0 to 3 hours and up to 20 pounds for 3 to 5 hours.  Based upon those findings, while relator may have been restricted to sedentary work with regard to his lower extremities, Dr. Young indicated that he could perform more than sedentary work with his upper extremities.

{¶ 42} Turning to the report of Dr. Soderstrum, the magistrate notes that he assessed a nine percent whole person impairment for the right shoulder condition.  Concerning limitations, Dr. Soderstrum found that relator could lift, carry, push, pull or otherwise move up to 50 pounds for 3 to 5 hours a day while Dr. Young concluded he could only do so for 0 to 3 hours a day.  Further, Dr. Soderstrum found that relator was unrestricted in his ability to handle up to 20 pounds while Dr. Young found that he could only manage such weight for 3 to 5 hours a day.  Further, while Dr. Young found that relator could not reach overhead, Dr. Soderstrum found that he could reach overhead and at floor level for 0 to 3 hours a day and Dr. Soderstrum specifically indicated that this limitation was due to the right upper extremity only.  Dr. Soderstrum did conclude that relator was disabled due to his right shoulder and left knee.

{¶ 43} In making his argument, relator asserts that the reports of Drs. Jewell and Talmadge do not constitute some evidence upon which OP&F could have relied to find

that his shoulder injury was not disabling. As medical advisor for OP&F, Dr. Jewell acknowledged that relator had a nine percent impairment for his right shoulder, but, concluded that injury was not disabling. The only statement which Dr. Jewell made with regard to relator's right shoulder was to note that there was no evidence that he had significant treatment after his resignation. This is correct; however, a 2015 MRI reveals a chronic labral tear and fraying of the infraspinatus tendon.

{¶ 44} Dr. Talmadge, by comparison, concluded that relator had a zero percent impairment for his right shoulder injury. Dr. Talmadge based this, in large part, upon his determination that Dr. Young should not have found any impairment for relator's right shoulder since relator's right shoulder measurements were basically equivalent (within measurement error) to his left shoulder measurements. Relator contends that this statement is incorrect.

{¶ 45} Returning to the report of Dr. Young, the measurements given upon examination for each shoulder include:

> Flexion was 144 degrees to the right and 153 degrees to the left. Extension was 34 degrees to the right and 30 degrees to the left. Abduction was 138 degrees to the right and 140 degrees to the left. Adduction was 43 degrees to the right and 38 degrees to the left. External rotation was 63 degrees on the right and 87 degrees on the left. Internal rotation was 50 degrees on the right and 58 degrees on the left. * * *

> The right shoulder appeared to have some atrophy. Slight left scapular winging was elicited. * * * Posterior reaching was decreased bilaterally. * * * Right shoulder movements were performed in a guarded manner. Palpable crepitus was appreciated over the right greater than left shoulder. Shoulder strength was normal. Shoulder Shrug was normal Drop Arm test was negative. Empty can test was negative. Neer's and Hawkins-Kennedy signs for impingement were negative bilaterally.

{¶ 46} Although the above measurements are not identical, the magistrate finds that Dr. Talmadge was not incorrect when he stated that the measurements were basically equivalent, within measurement error. Further, both doctors limited relator's ability to lift overhead (Young: never/Soderstrom: 0-3 hours). Unfortunately, the weight limits for which doctors are requested to opine do not exceed 50 pounds. As such, none of the medical evidence indicates whether or not relator could carry a human who weighed more

than 50 pounds.  At oral argument, counsel for relator indicated that relator could not carry a human from a building but there is no corroborating medical evidence.

{¶ 47} After reviewing the reports of Drs. Jewell and Talmadge, the magistrate concludes that they do constitute some evidence to support OP&F's award of a 12 percent disability retirement to relator.  The determination of whether or not a member is entitled to disability benefits is within the exclusive authority of OP&F.  *See* R.C. 3307.62(F).  It is the board, and not the physicians who examine members or review records, that make this decision.  *State ex rel. Hulls v. State Teachers Ret. Bd.,* 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26.  It is well established that a retirement board is not required to accept the views of any particular doctor or doctors, nor is the board required to give greater weight to a member's treating physician.  *See Pipoly* at ¶ 24, 26.  Although relator clearly does not like the outcome, the magistrate finds there is some evidence in the record to support OP&F's conclusion that his right shoulder injury was not disabling.

{¶ 48} Relator also contends that OP&F was required to find that his psychological condition was disabling.  Dr. Evans examined relator and found a ten percent impairment for the condition of dysthymic disorder and a ten percent impairment for the condition of anxiety disorder.  Ultimately, Dr. Evans opined that the dysthymic disorder did not render relator incapable of performing his duties as a firefighter, but that his anxiety disorder did.  However, Dr. Evans also indicated that relator may have been exaggerating the extent of his condition; and yet, he concluded that any exaggeration was not to the degree that would render the results of his examination uninterpretable.  Upon review of the evidence, Dr. Jewell concluded that relator's psychological condition did not impair him.

{¶ 49} At oral argument, counsel for relator asserted that Dr. Jewell is not competent to render an opinion concerning his psychological condition.  This may or may not be true.  Neither the Ohio Revised Code nor the Ohio Administrative Codes require that OP&F have advisors who specialize in both physical and psychological disorders.  In any event, OP&F board members include two representations of police departments, two representations of fire departments, one retired police officer, one retired firefighter, and three statutory members with professional investment experience, one appointed by the Governor, one appointed by the State Treasurer, and one appointed by the Senate President and Speaker of the House.  These men/women have experience and are in a

better position to determine the disability of OP&F members.  The report of Dr. Jewell does constitute some evidence upon which the OP&F could rely.

{¶ 50} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that OP&F abused its discretion when it awarded him a 12 percent disability retirement and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).